ADAM A. HAAS, *Appellee*, v. THE WICHITA RAILROAD &
LIGHT COMPANY, *Appellant*.

No. 18,180.

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Street Railway* — *Taking on Passengers at
Dangerous Place.* A street-car company may be held re-
sponsible for negligence in stopping its car and inviting pas-
sengers to enter it at a place made dangerous by temporary
repairs upon the street, although the work is being done by
the city and the company has no control over it.

2. ——— *Duty of Railway Company Not to Expose Passengers
to Dangers.* This responsibility arises from its duty to re-
frain from exposing passengers to dangers which could have
been avoided by the exercise of proper care; and proper care
may require the company in such a situation to stop its car
at a convenient point outside the limits of danger, or to
provide a step, furnish assistance, or otherwise provide for the
safety of passengers. In the circumstances of this case it
was a question for the jury whether such precautions to avoid
injuries were reasonably necessary, and whether the company
had exercised proper care.

3. ——— *Contributory Negligence—Question for Jury.* Upon
the facts of this case the question of contributory negligence
was properly submitted to the jury.

Appeal from Sedgwick district court, division No. 1.
Opinion filed May 10, 1913. Affirmed.

*Kos Harris,* and *V. Harris,* both of Wichita, for the
appellant.

*John W. Adams,* and *George W. Adams,* both of
Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages caused by personal injuries suffered by the plaintiff's wife in entering a street car in Wichita.

The car was standing in Cleveland avenue about twenty feet south of a street crossing. Cleveland avenue extends north and south. It was excavated on the west side of the street car track for about 200 feet south of Tenth street to the depth of the cross-ties by paving contractors for the city. The ground was left uneven, and a furrow at the end of the ties had left a soft ridge parallel with the track. The conductor was adjusting the trolley preparatory to running his car south, while passengers were entering the car. The car was an open one; passengers entered from the side by stepping from the ground upon a running board and thence between the seats extending across the car. The plaintiff's wife crossed Tenth street, walked past a work car standing there and along the side of this passenger car to the third seat from the north end, and was injured in entering the car. She testified:

"I walked by the work car so as to get on, but the furrow being plowed and the dirt being thrown back, I thought made it hard to get on, but other people had got on that day and the day before, so I stepped to the back end of the car where the conductor stood, . . . I walked down a little farther, about the third seat where the ridge seemed to be a little higher, where it seemed to be higher to get on; and when I went to get on I stepped my right foot upon the running board where this is about five or six inches wide, and at each side there is bars that run up and down, and I got hold with my hand, and I stepped my right foot, and when I pulled myself to get on and as I went to make my step higher, the dirt slipped under my left foot and my foot went back like that, and of course that jerked this foot off. . . . The other foot came off of the step of course, and I was thrown around backward and hard enough, but I still held with this one arm. . . . I hung with that one arm, and never let loose; I swung

Haas v. Street Railroad Co.

around back and struck here. . . . Below the knee on my left limb as I swung around. I struck on the steps I suppose, but I struck on the side of the car right on my back here above the kidney, back in here, as I swung around, but I never let loose with my left hand; I swung around that way. . . . I got up by myself as best I could and straightened up my clothes, and I tried it again and went right then, and the car started and I went on."

The distance from the ground, as excavated, to the running board was about 28 inches. The car stopped at the place referred to for passengers going south, who entered from the west side. There was nothing between the ground and running board to step upon. Mrs. Haas testified that she asked the conductor to assist her but he denied that she did so. The extent of the injuries and amount of damages are not disputed, and the only question is whether the defendant is liable.

The testimony was conflicting concerning the circumstances of the injury, but the version given by Mrs. Haas was corroborated, and the jury having found for the plaintiff it must be taken as true.

The jury returned the following findings:

"1. Did not Cora E. Haas know that the west side was excavated at the place she attempted to get on the car? A. Yes.

"3. Did the defendant have anything to do with the excavation of the street? A. No.

"4. Was there any other place to stop the car to receive passengers near Tenth street? A. No.

"5. Was there anything in the appearance of Mrs. Haas to suggest that she needed any help to get on the car? A. No.

"11. What do you find, in feet or inches, the distance she fell? A. About 28 inches.

"12. What was the nature of the ground on which Mrs. Haas fell? A. Loose dirt.

"13. What caused Mrs. Haas to fall from the car? A. Slipping on loose ground.

"14. Was not the fall caused by an accident for which no one is to blame? A. No.

"15. Was not the conductor, at the time Mrs. Haas was getting on the car, attending to his duties about the car? A. Yes.

"17. Was there anything to prevent Mrs. Haas going around to the east side of the car and getting on? A. Nothing more than the broken up condition of the street.

"19. Was not the intersection of the street at Tenth street open and ready for travel for teams and passengers from the east to the west side of Tenth street, and was there not a crossing for teams and passengers at that place? A. No, street was broken up.

"20. What was the depth of the excavation at the west side of the track, where the car stood? A. About from 8 to 12 inches.

"21. What was the height of the running board above the track? A. About 12 to 14 inches.

"24. Did Mrs. Haas ask for any assistance until after she fell off the car? A. No."

In the petition the plaintiff charged negligence of the company in digging up the street; in failing to provide steps for passengers; in the neglect of the conductor to assist her as requested; in failing to provide a safe place for passengers to board its cars; and in failing to provide a platform upon which to step; also in failing to warn passengers of the danger consequent upon the defective condition of the street. In instructing the jury the court recited the substance of these charges. The defendant complains of this because the evidence was uncontradicted that the excavation was made by authority of the city and the defendant had no control over it. This is true, but the court only stated the issues in the instructions referred to and informed the jury that the burden was upon the plaintiff to prove the charges of negligence. The jury were not confused for they expressly found that the company had nothing to do with the excavation. In other words, the plaintiff failed to sustain that particular charge of negligence and it is out of the case.

The following instruction is challenged as erroneous:

"You are further instructed that if you find defend-

ant's car was headed south and had been stopped for the receipt of passengers, that plaintiff had a right to assume that the west side was the proper side to board said car, and in the absence of knowledge to the contrary, or reasonable ground for believing to the contrary, she would not be guilty of contributory negligence in attempting to board said car on said side, except as elsewhere instructed."

It will be observed that the jury found that the street on the east side of the track was also in a broken-up condition although there was some evidence that it was not. But supposing the street there to be intact, no error is perceived in the instruction. When a street car is proceeding south passengers ordinarily enter on the west side, and this passenger might assume, in the absence of any reasonable ground to believe otherwise, that it was the side intended. Besides, she testified, and there was no evidence to the contrary, that the bar was in place on the other side. This bar is the ordinary barrier placed to prevent passengers from entering on the side where it is placed.

Error is assigned in the refusal of several instructions asked for, but so far as they were correct and pertinent they were included in the instructions given, either in the terms requested or in substance.

The jury were instructed that if the defendant stopped its car to receive passengers at the place where the injury occurred it was bound to make the place reasonably safe for that purpose; also that persons entering a street car upon the express or implied invitation of the company are justified in assuming that proper precautions have been taken for their safety, and that one of such precautions is to avoid stopping cars at a place where it is not safe for passengers to embark. An objection to these instructions presents the question whether a street-car company may be held liable for injuries to passengers in boarding a car which has been stopped to receive them in a place made dangerous by a temporary excavation in the street made

under municipal authority over which the company has no control. This question is also fairly presented by the findings and by a demurrer to the evidence.

When a duly equipped car is placed at or near a street crossing under circumstances indicating a readiness to receive and transport passengers, an invitation may be implied to enter it for that purpose. (*Citizens Street Railway Company v. Twiname,* 111 Ind. 587, 13 N. E. 55.) Persons embarking for passage on a car upon an invitation, express or implied, are justified in acting upon the assumption that proper precautions have been taken for their safety, and one of these precautions is to avoid stopping at a place where it is not safe to embark. (1 Nellis on Street Railways, 2d ed., § 300.) That authority at the section cited adds:

"It should either stop its cars short of, or pass them beyond, the danger point, where the company is under no direct obligation to repair or keep in good condition the bridges or streets along its line of way."

It was said in *Leveret v. Shreveport Belt Ry. Co.,* 110 La. 399, 34 South. 579:

"It has been repeatedly held that parties alighting from or embarking upon a train are authorized to act upon the assumption that the officers of the company have taken proper precautions to insure their safety." (p. 403.)

In that case it was held that the duty referred to was not limited strictly to the property of the company. In the opinion it was observed:

"Even if the defendant in this case had been under no direct obligation to repair the bridge or platform, it would have been its duty to avoid stopping its coach directly opposite to it for the purpose of taking on and putting off passengers. It was the duty to have kept advised of the condition of the bridge and platform, and not invited its customers to embark or alight at a dangerous place. There was no legal obligation on its part to have stopped the car precisely at that spot. It could and should have moved its coach further, if that place was not safe, even though the passengers might

be subjected to some inconvenience. Rather this than to place them in danger." (p. 403.)

The case is also reported in 1 Street Railway Reports, 253, with notes.

Where an electric car was stopped twenty feet beyond the crossing at an elevated part of the road, dangerous because unfenced and unlighted, whereby a person intending to take passage was injured, the court said that stopping and keeping the car in that place was an implied invitation to the person to take passage and was a negligent act, and the question of contributory negligence was for the jury. (*Vasele v. Grant St. Electric Ry. Co.*, 16 Wash. 602, 48 Pac. 249.)

While the carrier is not responsible for the condition of a street over which it has no control, it is still bound to stop its cars at reasonably safe places for the discharge of passengers. (*Stewart v. St. Paul City Ry. Co.*, 78 Minn. 85, 80 N. W. 854; *Turner v. City Electric Rly. Co.* 134 Ga. 869, 68 S. E. 735; *Foley v. Brunswick Traction Co.*, 66 N. J. Law, 637, 50 Atl. 340.)   Approaches to stopping places maintained by a street-car company, or for which it is responsible, must be kept reasonably safe. (*Messenger v. Valley City Street & I. R. Co.*, 21 N. Dak. 82, 128 N. W. 1025, 32 L. R. A., n. s., 881, and note.)   It is not liable for defects in the street which it is not under any duty to repair, but may be liable for an injury resulting to a passenger from negligently stopping its cars at a place made unsafe by the defective condition. (*MacKenzie v. Union Railway Co.*, 82 N. Y. Supr. Ct., App. Div., 124, aff. 178 N. Y. 638; *McGovern v. Railway Co.*, 136 Iowa, 13, 111 N. W. 412, 125 Am. St. Rep. 215, 13 L. R. A., n. s., 476, and note; *Richmond City Railway Co. v. Scott*, 86 Va. 902, 11 S. E. 404.)

While many decisions affirm the liability of street-car companies for injuries suffered by passengers in alighting at places unsafe for that purpose, comparatively few have been found declaring a like liability

to embarking passengers. This may be accounted for by the better opportunity of the latter to see and avoid the danger. No good reason for a distinction in principle appears. If the passenger is not negligent, the responsibility of the carrier is the same whether he is invited to take or to leave the car. The duty of the carrier to exercise proper care in both cases is referred to in the same connection. (1 Nellis on Street Railways, 2d ed., § 300.) In discussing the obligation of an interurban company to keep its stopping places reasonably safe, it was said in *Speck v. International Railway Co.*, 133 N. Y. Supr. Ct., App. Div., 802:

"The defendant selects its stopping place, invites its passengers to take the car and alight at that particular point, and some assurance of safety must accompany this selection and invitation." (p. 805.)

While in ordinary street-car service the rule that the company selects stopping places, applicable to interurban companies, may not govern, still, if a street crossing is made temporarily dangerous for intending passengers by repairs upon it, the stop may be omitted or made at a point beyond or before reaching the place of danger, and this should be done if a reasonable regard for safety requires it. (*Richmond City Railway Co. v. Scott*, 86 Va. 902, 908, 11 S. E. 404.)

It is concluded that the defendant may be held responsible for its negligence in stopping its car and inviting passengers to embark thereon at a place made dangerous by temporary repairs upon the street. This responsibility does not spring from any negligence in causing or permitting the excavation, for it had no control over it, but arises out of its duty not to expose passengers to dangers which could have been avoided by the exercise of proper care. Proper care in this instance may have required the defendant to stop its car to receive and discharge passengers at a convenient point outside the limits of danger, or to provide a step, furnish assistance, or otherwise provide for the

Haas v. Street Railroad Co.

safety of passengers. It was a question for the jury in this case, in the circumstances shown, whether such precautions to avoid accident were reasonably necessary, and whether proper care was exercised by the company.

It was said in *Tipton v. Street Railway Co.,* ante, p. 451, 132 Pac. 189 that a street-car company "is not to be held responsible for the condition of public streets, and ordinarily will not be liable for injuries to passengers caused by defects therein." (p. 458.) This principle does not conflict with the wholesome rule that a carrier should not receive and discharge passengers at a place which is dangerous for that purpose, although it may not be responsible for the defect.

It is contended that the demurrer to the evidence should have been sustained because of contributory negligence of the passenger. It does not follow that because the place was unsafe the passenger was bound to apprehend the danger and refrain from going to the car. (*Corlett v. City of Leavenworth,* 27 Kan. 673; Booth on Street Railways, 2d ed., § 331.) If persons of ordinary prudence in the same or a similar situation and with like means of knowledge would have boarded the car as she did, she was not necessarily negligent in doing so. Within the principles stated and authorities cited in *Johnson v. Railroad Co.,* 80 Kan. 456, 103 Pac. 90, and other decisions of this court, it must be held that the question of contributory negligence was properly submitted to the jury.

The judgment is affirmed.