No. 22,461.

Anna Kroll, *Appellee*, v. The Union Pacific Railroad Company, and Walker D. Hines, as Director General of Railroads, etc., *Appellants*.

SYLLABUS BY THE COURT.

Negligence—*Defective Bolt-threading Machine—Proximate Cause.* The facts considered, and *held*, the jury was warranted in finding that an injury sustained by the operator of a bolt-threading machine was the proximate result of a defect in the machine.

Appeal from Wyandotte district court, division No. 1; Edward L. Fischer, judge. Opinion filed February 7, 1920. Affirmed.

*R. W. Blair, T. M. Lillard, O. B. Eidson,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellants.

*W. W. McCanles,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for damages for personal injuries. The plaintiff recovered, and the defendant appeals.

The plaintiff was employed in the defendant's machine shop,

Kroll v. Railroad Co.

and for more than a week previous to the accident operated a bolt threader. The essentials of a bolt threader are: a vise which holds the bolt, a traveling carriage to which the vise is fixed, moving on a way, and a thread-cutting die, together with appliances for tightening the jaws of the vise, moving the carriage forward and back, and applying and releasing power. A bolt is placed in the vise with the hands, the jaws of the vise are tightened so that they grip the bolt securely, the carriage is moved toward the die, the end of the bolt enters the die, the die revolves and cuts threads on the bolt until an automatic drop opens the die and it ceases cutting, the carriage is moved back, and the bolt is taken out with the hands. From the time the bolt is placed in the vise until it is removed it need not be touched by the hands. The threading machine at which the plaintiff worked was different. It was old—one of the first models produced—and the traveling carriage had lateral motion. There was testimony for the defendant that this motion was an essential feature of the machine, so that crooked bolts might wobble with blind sagacity into the die without being touched by the operator. There was other testimony that, on account of the lateral motion of the carriage of this machine, it was necessary on occasion for the operator to use the hand to guide bolts into the die. The vise of the machine was so defective that it would not keep bolts rigid while in the die, with the result that when gripped by the cutting edges of the die the bolt was converted into a revolving shaft. When this occurred, bolts which were of different sizes, and which were of various lengths, from two feet to long rods, were spoiled.

Soon after the plaintiff was assigned to the machine she discovered that by taking hold of a bolt with her hand, the defective grip of the vise was sometimes supplemented so that it kept the bolt rigid until the threads were cut. The plaintiff offered no technical explanation of how the desired result was produced. She merely told what she did, and it seems quite clear it was not simply her clasp, but a pull on the bolt, making it act like a lever in the jaws of the vise, which made her action effective. Notwithstanding the plaintiff's improvisation, she continued to spoil bolts, as many as eight a day. On a Saturday she told the assistant foreman the machine would not work, and she could not do anything with it. The assistant

foreman said he would have it fixed. Later in the day a machinist came to the machine, looked at it, and said he would fix it on Monday. On Monday the plaintiff attempted to use the machine, but it did not work well, and she accomplished but little. The foreman himself came to the machine, and told her to work on a drill press that afternoon, which she did. The next morning she asked the foreman if she should return to the drill press, and he replied, "No, go on your machine." The plaintiff testified as follows:

"So I went back on my own machine, the bolt cutter. I was wearing canvas gloves, because the bolts were rough on my hands. Henry Yokum, an old machinist in the shops, gave me the gloves a few days after I went to work on the bolt machine. I had them on that Monday that Mr. Southwick [the foreman] put me on the drill press. Nobody ever told me not to use gloves, and there were no rules posted against their use. When I went to work on that Tuesday morning it was July 23. It was about seven o'clock. I threaded one bolt. I started to thread the second one, and the bolt was slipping, and I got it with my hand like I always did get hold of it, and sometimes it would stop it you know. Well, I got hold with the right hand, and it started to winding my hand up, and I thought I would grip it with my left hand to hold it that way, and took both of my hands, and it just kept going, and I screamed, and it just pulled me clear over, pulled my arms out."

The plaintiff's hands were mangled and crushed. The bones of some of the fingers and one thumb protruded through the flesh. The end of the index finger on each hand was amputated, joints were left in an enlarged and stiffened condition, and gripping capacity was lessened. Her hands are contorted, unsightly, clumsy, and inefficient, and at times she still experiences pain in her arms and a dragging sensation in her shoulders. A few days after the accident the vise of the machine was repaired.

The jury returned the following special findings of fact:

"1. Was there any defect in the machine which plaintiff was working at the time of the injuries? A. Yes.

"2. If you answer question No. 1 in the affirmative, then state fully of what such defect consisted. A. Gripping vise.

"3. Were the plaintiff's hands injured as result of her gloves catching on a revolving bolt which she had placed in the vise or gripping part of the machine? A. Yes.

"4. Did plaintiff voluntarily place her hand on a revolving bolt in the vice or gripping part of the machine? A. Yes.

Kroll v. Railroad Co.

"5. If you answer question No. 4 in the affirmative, state whether the plaintiff would have been injured if she had not placed her hand on the revolving bolt. A. No.

"6. If you answer question No. 4 in the affirmative, state whether or not, when the plaintiff put her hand on the bolt, she knew and appreciated the danger in so doing. A. No."

The defendant argues that the defect in the machine was not the proximate cause of the injury, because the injury was not one reasonably to be anticipated. For a statement of rule the defendant quotes the syllabus of the decision in the case of *Cleghorn v. Thompson*, 62 Kan. 727, 64 Pac. 605:

"Negligence, to be actionable, must result in damage to some one, which result, in the absence of wantonness or *malus animus*, might have been reasonably foreseen by a man of ordinary intelligence and prudence, and be the probable result of the initial act.

"An allegation of negligence is not sustained by evidence of acts resulting in damage to another, which result is not the reasonable and ordinary outcome of such acts, and which would not have been foreseen or anticipated by the exercise of ordinary prudence and foresight under all the circumstances of the case." (p. 727.)

Cleghorn discharged a small-bore rifle at some dogs, probably 75 yards northeast of where he was standing. Some 75 or 80 rods away in that direction was a highway running north and south. Between the dogs and the highway was a sandy embankment. The bullet was deflected, traveled a distance of 55 or 60 rods from the point of deflection, and struck a man on the highway, east, or possibly southeast, of where Cleghorn was standing.

The defendant also quotes the syllabus of the decision in the case of *Hill v. Railway Co.*, 81 Kan. 379, 105 Pac. 447:

"In the absence of wanton or intentional wrongdoing, an employer who furnishes defective instrumentalities is liable to an employee only when danger would reasonably be apprehended from their use.

"If persons of ordinary caution and prudence would not, in the light of the attendant circumstances, anticipate danger in using a defective appliance, and danger is not a natural and probable consequence of such use, liability to an employee for negligence in furnishing it does not arise against the employer." (Syl. ¶¶ 1, 2.)

In that case a hose on a locomotive leaked. In a night trip going east, wind from the north blew dripping water on the engine steps, and the night was cold enough that the water froze there. The fireman slipped on the ice.

The statements of principle quoted illustrate the difficulty and the danger of generalizing respecting a broad subject. If read critically, the Cleghorn case makes it necessary that the injurious result should have been foreseeable by a man of ordinary prudence and intelligence. The same justice who formulated the syllabus of the Cleghorn case, stated the true rule in this respect in the syllabus of *Railway Co. v. Parry*, 67 Kan. 515, 73 Pac. 105:

"Negligence, to be the proximate couse of an injury, must be such that a person of ordinary caution and prudence would have foreseen that some injury would likely result therefrom, not that the specific injury would result." (Syl. ¶ 2.)

The fault of the syllabus of the Cleghorn case was avoided in the Hill case, but the statement of principle made in each of the three cases referred to is liable to be misleading, and has, in fact, led counsel for defendant astray, because an important matter is left to implication. The prudence and foresight required are those of the hypothetical reasonably prudent man. If, however, the conduct under investigation concern navigation, reasonable prudence of a landlubber is not enough. Prudence must be relative to the obligation of the person who must take forethought. A master must furnish his servant a reasonably safe place in which to work, and reasonably safe appliances with which to work. If the place be a machine shop, the foresight must be appropriate to the character of the place, and if the appliance be a machine, the master must have sufficient foresight to qualify him to perform the duty.

The defendant measures the forethought of its master mechanic by the forethought of a machine operator—in this instance, a woman taking the place of man in machine-shop work during the war. In the brief it is said:

"The plaintiff does not claim to have ever anticipated danger resulting from this defect. In fact, the jury finds specifically that she did not know or appreciate that there was any danger arising from it. She knew the entire situation. She was a person of ordinary care and prudence. Nothing was involved except ordinary physical laws. The measure of defendant's care was that of an ordinarily prudent person and just such a person as the plaintiff was."

The plaintiff was not required to possess expert knowledge of the construction and operation of the machine, and to inspect it and test it in the light of such knowledge, to dis-

Kroll v. Railroad Co.

cover if its manner of functioning threatened injury. Her instruction was limited to operation, and it was enough for her to know that if she did certain things the machine would do certain things. She could manipulate the machine with the assurance that the master had seen to it that it was reasonably safe, and with the assurance that even if it did not do very good work, it was not dangerous; and the foresight required of her was no more than the foresight of a reasonably prudent person in her situation, having her instruction and discharging her duties.

The result is, the foresight required of the plaintiff was different, both in kind and degree, from the foresight required of the defendant, and the major premise of the defendant's argument fails.

A revolving shaft of iron has a peculiar propensity for picking up and winding about itself articles of clothing coming in contact with it. The writer recalls very vividly an occasion when a certain small boy was suddenly and violently jerked back from the tumbling-rod of a horse-power threshing machine, the action being accompanied by warning language not less forcible. The legislature knew of the propensity when it required all shafting in machine shops to be boxed when practicable. Courts of last resort have held that it is negligence *per se* for a shop employee to suffer his clothing to come in contact with a revolving shaft. This court declines to hold that the propensity is a matter of common knowledge; but it is a matter that the foreman of a modern machine shop should know about.

It seems quite natural that, in presence of erratic action of the defendant's threading machine, an operator expert in nothing but operation might voluntarily resort to some simple expedient to meet and correct the irregularity, such as taking hold of the slipping bolt with the hand. In any event, it was a fair question for the jury, whether or not the defendant, with full knowledge of the defect in the machine and how it was performing, should have foreseen danger from its continued use without repair.

The court has carefully considered a subject first presented to the trial court by motion to discharge the jury. The fairness and integrity of several persons were involved, and a

record of the facts will not be made in this opinion. It is sufficient to say the trial court's finding that no wrong was intended, and that the defendant suffered no prejudice, is approved. The trial court's finding that the verdict was not the product of passion, prejudice, or an unfair spirit on the part of the jury, is likewise approved.

The judgment of the district court is affirmed.