## No. 45,476

Treva Elliott, *Appellee,* v. Chicago, Rock Island and Pacific Railroad Company, *Appellant.*

(454 P. 2d 124)

Opinion filed April 28, 1969.

*Clayton M. Davis,* of Topeka, argued the cause, and *Harry W. Colmery, Mark L. Bennett, Wilbur G. Leonard, Robert A. McClure, Jerry W. Hannah, Frank C. Sabatini, Gerald J. Letourneau, John E. Wilkinson, Mark L. Bennett, Jr.* and *John E. Davis,* all of Topeka, were with him on the brief for the appellant.

*Albert L. Kamas,* of Wichita, argued the cause, and *Richard A. Render,* also of Wichita, and *Jack O. Bowker,* of McPherson, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action for personal injuries claimed by the plaintiff to have been sustained when alighting from

the defendant's standing passenger train at its Hutchinson, Kansas, station. The first trial in June, 1967, resulted in a hung jury. The second trial in October, 1967, resulted in a jury verdict for the plaintiff in the sum of $61,000, upon which judgment was entered and from which appeal has been duly perfected, presenting the issues hereafter discussed.

On the 6th day of August, 1963, Treva Elliott (plaintiff-appellee) was sixty-three years of age and resided in McPherson, Kansas. She decided to take her three and one-half year old grandson, Timothy, for his first train ride. She purchased a round trip ticket from McPherson to Hutchinson, and discovering the train would be late, telephoned Timothy's mother to tell her of the delay. Timothy's mother came to the station with her sister and snapshots were taken of the travelers. Timothy's mother and aunt left before the train arrived.

When the defendant's train No. 39, westbound from Kansas City, arrived at McPherson, Mrs. Elliott asked the ticket agent which car she and Timothy would be riding in, and upon being told, Mrs. Elliott snapped a picture of Timothy in front of the steps of the car they rode in as a memento of his first train ride. (This snapshot is presented in the record as plaintiff's *"Exhibit No. 2,"* to which reference will hereafter be made.) After the picture was taken trainmen opened the door, placed a step stool on the platform and helped Mrs. Elliott and Timothy aboard the train. Another lady, Mrs. Clinton Brown, with small children also boarded the train at McPherson.

After the train arrived at Hutchinson, the plaintiff and her grandson left their seats, went back to the vestibule, turned left and started down the steps to the station platform. Timothy was ahead of the plaintiff when she observed that the step stool was not on the platform below the bottom step of the car. She testified:

"Well, Timmy was far enough down ahead and I saw that he was going to take that step, and there was no step stool there and it was too far for him to step and—"

Two trainmen were standing on the platform near the point where a step stool would normally have been placed. However, the record does not indicate the extent to which they were offering assistance to those departing from the train. Thus, while the plaintiff was on the first or second step and Timothy was on the third or fourth, she reached out for Timothy, caught hold of him and

pushed him back. In so doing the plaintiff was caused to slip and fall, sliding down the steps on her back, resulting in the injuries for which this suit is brought. Timothy did not fall and was still standing on the steps after the accident.

The steps of the railroad car in question were dry and there was no foreign material which caused her to slip and fall. The car was standing perfectly still.

The plaintiff waited in the depot at Hutchinson a short time and returned to McPherson on the eastbound train No. 40 with her grandson, Timothy.

At the close of the plaintiff's evidence the trial court overruled the defendant's motion for a directed verdict.

The defendant's evidence disclosed that a conductor and a brakeman were standing on the station platform on either side of the car steps. The brakeman testified in his experience a step stool was always used to assist passengers to descend from the steps of cars of the type shown in plaintiff's Exhibit No. 2 to the platform. A conductor who worked on train No. 39 west of Pratt on August 6, 1963, confirmed that he would always use a step stool for passengers getting on or off a car of the type shown in plaintiff's Exhibit No. 2. Further evidence of the defendant disclosed the distance of the platform at Hutchinson to the bottom of the steps of passenger cars varies between eleven and fourteen inches, depending upon the type of car and the point on the platform where the car stopped. An agent-yardmaster for the defendant confirmed that a step stool should be used to assist passengers on and off cars of the type shown in plaintiff's Exhibit No. 2.

A motion for a directed verdict at the close of all the evidence interposed by the defendant was overruled, and in due course the jury was instructed, its verdict returned, and judgment entered for the plaintiff in accordance therewith.

The Chicago, Rock Island and Pacific Railroad Company (defendant-appellant) hereafter referred to as the appellant, contends the trial court erred in denying its motion to dismiss at the close of the appellee's evidence. This is a challenge to the sufficiency of the appellee's evidence to make a submissible case for the jury. In ruling on a motion for a directed verdict, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach

different conclusions thereon, the motion must be denied and the matter submitted to the jury. (*Williams v. Benefit Trust Life Ins. Co.*, 195 Kan. 579, 408 P. 2d 631; and *Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67.)

The same rule is applied where it is contended that a party is contributorily negligent as a matter of law. The question of contributory negligence is ordinarily a question for the jury and is to be determined by the court only when the facts are such that reasonable minds could not differ. (*Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909; and *In re Estate of Lloyd*, 178 Kan. 572, 290 P. 2d 817.)

It is argued the appellee's case was tried upon the theory that the appellant did not provide, at its station in Hutchinson, a step stool for the use of her three and one-half year old grandson to alight from the bottom step of the railroad car to the station platform; and that the appellee made no contention and presented no evidence or inference that a step stool was required for her. It is thus contended the appellee's theory is based upon the premise that some violation of a duty to the appellee's grandson constituted negligence toward her.

We shall ignore attempts made by the appellant to argue the weight of the evidence, or reasonable inferences to be drawn therefrom. Beyond this the appellant relies upon statements of the appellee to the effect that she was afraid her grandson was going to fall when she first saw there was no step stool and reached for him, and that if she had not reached for him she would not have fallen. On this evidence the appellant argues:

"Not one scrap of evidence appears in plaintiff's case (not in all the evidence, for that matter) that a stepbox was needed, or any assistance was needed, by *plaintiff*, Treva Elliott, to alight from the car at Hutchinson. It must be kept in mind that this is an action based on negligence toward *Treva* Elliott, not *Timothy* Elliott; for a violation of a duty owed *Treva* Elliott, not *Timothy*. Timothy is not the plaintiff alleging an injury to him due to the absence of a stepbox. No evidence indicates, either directly or by inference, that Treva Elliott was injured while attempting to alight from the car step to the station platform because of the absence of a stepbox. The violation, if there was any, of a duty owed by defendant to a third person cannot be the basis of a claim by the plaintiff. *Dye v. Rule*, 138 Kan. 808, 28 P. 2d 758; *Marklinger v. Railroad Co.*, 95 Kan. 69, 71, 147 Pac. 1132; 38 Am. Jur., Negligence, §18, p. 660."

Basically, the appellant makes the same argument attacking the order of the trial court overruling its motion to dismiss the action at the close of the appellee's evidence, as it does attacking the order

overruling its motion for a directed verdict at the close of all the evidence. The appellant argues the evidence clearly demonstrates contributory negligence of the appellee which proximately contributed to her injuries.

The petition herein alleged the following acts of negligence by the appellant, which were the sole and proximate cause of the appellee's injuries:

"1. Failure to warn passengers that the step stool was not in place to assist in their disembarking from the train;

"2. Failure to warn passengers that the distance from the bottom step to the platform was longer than could safely be taken without assistance;

"3. Failure to assist the plaintiff and her grandson in disembarking from the steps to the platform;

"4. Failure to assist the plaintiff in her act of preventing her grandson from falling off of the train;

"5. Failure to place a step stool at the bottom of the steps so as to assist the passengers in disembarking from the train;

"6. Failure to maintain the vestibule and steps in a safe condition so as to prevent passengers from slipping thereon."

The appellant in its brief analyzes each of the allegations of negligence set forth in the petition and concludes, upon reviewing the evidence in the record with respect to each, that there was no evidence to disclose a violation of any duty on its part toward the appellee which was a proximate cause of her fall. Each point is analyzed in isolation and as such tends to support its theory.

In the "stop-camera" technique, used by the appellant to analyze the evidence, each motion of the appellee is somehow interrupted and carefully examined for the purpose of discussing the appellant's obligations to the appellee, as distinct from its duties to her infant grandson. Of course, this method has no relation to the flow of events as they actually occurred or as they were presented to the jury.

The appellee tried this case on the theory that the appellant was negligent in failing to provide a step stool on the platform at Hutchinson for the use of her infant grandchild, or in the alternative, failing to assist the child in descending the steps. Pursuing the appellee's theory we shall first consider the question of negligence and then the question of proximate cause.

The evidence concerning negligence was relatively simple. At McPherson the trainmen put down a step stool and helped the appellee and her grandchild get on the train. Appellee's Exhibit

No. 2 disclosed the height of the bottom step from the station platform in McPherson in relation to her grandson—it disclosed the top of the bottom step to be well above the knees of her grandchild standing at the step. In descending the steps at Hutchinson, the appellee observed the step stool was not in place. Trainmen were on each side of the steps, it is true, but there is no evidence that either of them saw the appellee or her grandchild descending the steps, or that they made any effort to assist the child. As a matter of fact the testimony of the brakeman was that he did not recall the little boy at all. He further stated there were seldom more than one or two passengers getting off. From the testimony given by the appellee and the trainmen, the jury could reasonably infer that neither the conductor nor the brakeman saw the child, and that unless the appellee acted as she did, her grandchild could have been injured stepping from the bottom step to the platform. It should be noted the appellee and the child were steadily moving throughout the incident, which takes longer to describe than it took to occur. Thus, the evidence and the reasonable inferences therefrom were that the grandchild was going to step off unassisted by anyone, and the appellee, being aware the distance was too great for the child without a step stool, took reflective action—she grabbed for him to prevent him from falling, became overbalanced, fell backward on the steps and was seriously injured.

From all the evidence, a step stool should have been used to assist passengers descending from the type of car shown in appellee's Exhibit No. 2.

In the exercise of the highest degree of care, the circumstances of the particular case determine whether the employee of a carrier is under a duty to assist a passenger in alighting. The duty to assist a passenger in boarding or alighting from the conveyance may arise when the surrounding circumstances are such as to suggest to the employee of the carrier the necessity of assistance. (*King v. Vets Cab, Inc.,* 179 Kan. 379, 383, 295 P. 2d 605.)

In *King v. Vets Cab, Inc.,* supra, the court said:

"In *Kennedy v. Railways Co.,* 114 Kan. 853, 221 Pac. 249, we held that the obligation of the carrier of a passenger continues not merely while the passenger is being received and carried, but also while he is leaving or alighting from the conveyance, and imposes upon the carrier an obligation to provide facilities for alighting from the conveyance without danger, where the facts and circumstances demand such facilities and assistance." (p. 383.)

Another case dealing with the duty of care toward passengers is *Haas v. Street Railroad Co.*, 89 Kan. 613, 132 Pac. 195. The court there said in its opinion:

". . . Proper care in this instance may have required the defendant to stop its car to receive and discharge passengers at a convenient point outside the limits of danger, *or to provide a step, furnish assistance, or otherwise provide for the safety of passengers. It was a question for the jury in this case, in the circumstances shown,* whether such precautions to avoid accident were reasonably necessary, and whether proper care was exercised by the company." (pp. 620, 621.) (Emphasis added.)

Upon the foregoing law and the evidence adduced at the trial, the trial court properly left for jury determination the question whether the appellant was negligent in failing to provide a step stool on the platform at Hutchinson for the use of the infant, or in the alternative, failing to assist the child in descending the steps.

The appellant contends its employees in the exercise of the highest degree of care toward passengers surely were not bound to anticipate the impulsive, sudden and erratic action of the appellee in grabbing for Timothy, particularly when she was still near the top steps and Timothy was half way down. It argues no pronouncements of the courts have been found espousing that trainmen be possessed of clairvoyance in order to perform the appellant's legal duty to passengers.

The question whether there is such an identity of interest between an infant *non sui juris* and its lawful custodian that the omission of a duty owing to the child, which results in injuries to the custodian who attempts to prevent or mitigate injuries to the child arising from the omission, can be the basis of an action for negligence by the custodian, is one of first impression in this jurisdiction.

It is well settled the custodian of an infant *non sui juris* has the duty to use reasonable care to protect the child against known hazards. That is, the conduct of the custodian to use reasonable care must be measured in relation to the age and intelligence of the infant under the particular circumstances involved.

In 38 Am. Jur., Negligence, § 207, it is said:

"Since an action brought by a parent in his own right to recover for an injury sustained by his child through the negligence of the defendant can be defended successfully upon the ground that the negligence of the parent contributed materially and proximately to the injury, . . . the question whether the care exercised by a parent for the safety of his or her child was such as to constitute negligence is important in many cases. . . . It is the duty of parents and custodians of children who are non sui juris to use reasonable care to protect them against known hazards. . . ." (pp. 892, 893.)

Under the foregoing rule the appellee as custodian of an infant of tender years had a positive duty to protect the child against known hazards. Here the appellee was suddenly confronted by circumstances which conceivably gave rise to alternative methods to protect the child in her custody. In 38 Am. Jur., Negligence, § 194, it is said:

". . . The law recognizes the fact that a prudent man, when brought face to face with an unexpected danger, may fail to use the best judgment, may omit some precaution he might have taken, and may not choose the best available method of meeting the dangers of the situation. It does not charge him with contributory negligence for the fact alone that he makes a mistake in the method adopted to escape a peril which exists not through his fault, but through the negligence of another. Although the plaintiff may not have taken the safest course, he may yet recover for injuries sustained, if he can show that he was required to act suddenly, in an emergency, without opportunity for deliberation. . . ." (p. 875.)

The foregoing rule was followed in this jurisdiction in *Schulz v. Chicago, Rock Island & Pac. Rld. Co.*, 167 Kan. 228, 205 P. 2d 965. There the court said:

". . . As we have heretofore indicated the record discloses sufficient evidence to sustain recovery against the appellants based on their own negligence. It also reveals testimony which warrants the conclusion Schulz was confronted with sudden, unexpected danger which well might have influenced his judgment and conduct. The rule in this jurisdiction is well established that in such a situation one who, by the negligent act of another, is placed in a position of danger which requires immediate and rapid action, without time to deliberate as to the better course to pursue, is not held to the strict accountability required of one situated under more favorable circumstances and is not guilty of contributory negligence as a matter of law if he does not exercise the greatest prudence or best judgment or choose the wisest or safest course in attempting to avoid the perils of the situation with which he is suddenly confronted. . . ." (p. 236.)

In applying the foregoing rule the failure of the appellee to adopt one of the possible alternatives suggested by the appellant to mitigate the hazardous situation created by its negligence, did not, as a matter of law, establish contributory negligence by the appellee, and the issue of the appellee's contributory negligence was properly submitted to the jury.

A case in point is *Clark v. Famous Shoe & Clothing Co.*, 16 Mo. App. 463 (1885). There an action was predicated on the negligence of the defendant in leaving a hatchway open on a public sidewalk. The plaintiff fell into it while attempting to rescue her four year old daughter, who had slipped on the sidewalk and had fallen in

front of the open hatchway. The defendant claimed on appeal the plaintiff's evidence disclosed she was guilty of contributory negligence. In affirming the lower court's judgment for the plaintiff it was said:

". . . If plaintiff, walking along this sidewalk alone, had by inadvertence fallen in to this opening, it might, perhaps, have been conclusive proof of negligence on her part. Yet who can justly say, that because in her anxiety for her little child, who was or whom she deemed to be in immediate danger, she went one step too far, or slipped, or disregarded those precautions which under other circumstances she might or ought to have taken, she was guilty of such negligence as to debar her of all redress." (pp. 465, 466.)

Another case in point is *Loyd, et al. v. H. & St. Joe. R. R. Co.,* 53 Mo. 509 (1873). There the court said:

". . . Whilst it may be the law, that a passenger, who jumps from a train when in motion, takes the risk of injury to life or limb, it does not follow that the plaintiff in this case could be expected, whilst standing on the steps of the car, and after her child three years old had been lifted out, to have the presence of mind to deliberate on the propriety of following her child although the train immediately commenced to move, nor had she time to reflect on the danger of a straightforward movement at right angles to the train, instead of inclining in the direction the train was moving." (pp. 513, 514.)

The appellant relies on cases for the proposition that the violation of a duty owed to a third person cannot be the basis of a claim by the appellee. (Citing, *Dye v. Rule,* 138 Kan. 808, 28 P. 2d 758; and *Marklinger v. Railroad Co.,* 95 Kan. 69, 147 Pac. 1132.) These cases are distinguishable upon their facts and are not in point with the case at bar. Here neither the appellee nor her grandchild was a "third person" within the meaning of the rule asserted by the appellant. Here the appellee at all times material stood *in loco parentis* to her grandchild. Under these circumstances the applicable rule is:

". . . A parent in the immediate control of a child of tender years who is too young to be capable of exercising any self-reliant care for its own safety is responsible for its preservation from hazards, and it is the parent's duty to watch over such child and to guard it from danger. In such case, the parent may be regarded in a sense as a repository of a trust to nurture and protect his offspring. . . ." (39 Am. Jur., Parent and Child, § 46, pp. 669, 670.)

A child *non sui juris* was ejected from a train for nonpayment of fare in *Braun v. Northern Pacific Ry. Co.,* 79 Minn. 404, 82 N. W. 675 (1900). There the child's father voluntarily left the train to be with the child. The Supreme Court of Minnesota in its opinion said:

". . . The reason for the rule that the expulsion of the child operates as an expulsion of the parent is the same, whether applied to a case where the

child may be lawfully and rightfully removed, or to a case where such removal is wrongful. The reason for the rule is found in the laws of humanity and nature. It is the parent's duty to care for and protect his child. There is an inseparable bond of unity between them. And to hold where the child is forcibly removed and ejected from a railroad train in a strange city, among strangers, whether rightfully or wrongfully, the act of the parent in following the child is purely voluntary on his part, and that such removal of the child is not in effect the removal of the parent, would do violence to the sacred relations existing between parent and child. . . . In such case the departure of the parent from the train is not voluntary in the sense that it is of his own choosing or of his own free will. On the contrary, the act of the railroad company in removing the child is the inducement, the cause, and it would be unreasonable to say that under such circumstances the parent left the train of his own free will. So we conclude that the ejection of a child of tender years from a railroad train for the failure of the parent in charge of and accompanying the child to pay its fare, whether rightful or wrongful, is in effect the ejection and removal of such parent. Gibson v. East Tenn., V. & G. R. Co., 30 Fed. 904." (p. 410.)

Negligence is the absence of care according to the circumstances. Negligence involves a relationship between man and his fellows. Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. In every instance, before an act is said to be negligent, there must exist a duty to the individual complaining, and the observance of which would have averted or avoided the injury. The plaintiff who sues his fellowman sues for a breach of duty owing to himself. The victim does not sue derivately, or by right of subrogation, to vindicate an interest invaded in the person of another.

One who drives at a reckless speed through a crowded city street is guilty of a negligent act, and therefore, of a wrongful act irrespective of the consequences. It is wrongful in the sense that it is unsocial, but wrongful and unsocial to other travelers only because the eye of vigilance, sometimes referred to as the prudent person, perceives the risk of damage. If the same act were to be committed on a speedway or a racetrack, it would lose its wrongful character. The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. (*Palsgraf v. Long Island R. R. Co.*, 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253; and Seavey, Negligence, Subjective or Objective, 41 Harv. L. Rev. 1, 6.)

To repeat, negligence is the absence of care according to the circumstances.

By reason of the foregoing authorities, which we find persuasive, and the circumstances presented by the evidence in the instant case, we hold the omission of the appellant herein to provide assistance for the safe descent of the infant grandchild of the appellee from the steps of the railway car to the station platform was, in effect, the omission of a duty owed to the appellee.

Was the negligence of the appellant the proximate cause of the appellee's injury and damage?

It is not a necessary element of negligence that one charged with it should have been able to anticipate the precise injury sustained, but the negligence charged must have been the proximate or legal cause of the injury, and a determination of the proximate cause is ordinarily a question for the jury.

There are many definitions of the term "proximate cause," but one of the most widely quoted defines the proximate cause of an injury to be that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occurred. It has been said the proximate cause of an injury is that which naturally leads to, and which might have been expected to be directly instrumental in, producing the result. In testing whether a negligent act is the proximate cause of an injury it is said the injury is the proximate result of negligence only where the injury is the natural and probable consequence of the wrongful act. Natural and probable consequences are those which human foresight can anticipate because they happen so frequently they may be expected to recur. It has also been said that it must appear the injury was anticipated or that it reasonably should have been foreseen by the person sought to be charged with liability.

The foregoing statements on proximate cause and the authorities supporting them are found in *Rowell v. City of Wichita*, 162 Kan. 294, 176 P. 2d 590.

Speaking of proximate cause in *Kroll v. Railroad Co.*, 106 Kan. 294, 187 Pac. 661, the court said:

". . . The prudence and foresight required are those of the hypothetical reasonably prudent man. If, however, the conduct under investigation concern navigation, reasonable prudence of a landlubber is not enough. Prudence must be relative to the obligation of the person who must take forethought. . . ." (p. 298.)

Based upon the evidence presented by the record herein, the jury was warranted in finding the failure of the appellant to assist the

appellee's grandson in disembarking from the steps of the railway car to the platform of the station in Hutchinson, Kansas, constituted the omission of a duty owed to the appellee which was the proximate cause of the appellee's injury and damage.

The appellant contends it was error for the trial court to deny its motion for judgment notwithstanding the verdict.

A special question was submitted to the jury as follows:

"If you find the defendant was negligent, then please state *the act* of negligence." (Emphasis added.)

and the jury answered:

"From Instruction No. 17, under Treva Elliott, the act of negligence was 'Failure to assist the plaintiff and her grandson in disembarking from the steps to the platform.' "

By reason of the foregoing answer to the special question, the appellant contends it was exonerated of all other acts of negligence charged by the appellee. This argument is based upon the proposition that where the defendant in an action for damages for personal injuries, founded on negligence, is charged with various acts of negligence, and the jury in answer to a special question submitted specifies the act or acts of negligence of which it finds the defendant guilty, the defendant is absolved from all alleged acts of negligence not included in the answer. (*Walls v. Consolidated Gas Utilities Corp.,* 150 Kan. 919, 96 P. 2d 656; *Jones v. A., T. & S. F. Rly. Co.,* 148 Kan. 686, 85 P. 2d 15; and *Rasing v. Healzer,* 157 Kan. 516, 142 P. 2d 832.)

On this premise the appellant argues: "The evidence is conclusive on the point that neither Treva Elliott nor her grandson, Timmy, had reached the bottom step of the car, at which point the jury said in answer to its special question the defendant was negligent in failing to assist Treva Elliott and her grandson in 'disembarking from the *steps* to the platform.' Thus, the answer by the jury to the special question establishes the fact that the trainmen did not help Treva Elliott and her grandson from the bottom step to the platform, *but* the evidence further establishes that *at the time* of this accident, Treva Elliott and her grandson had not reached the place where they could be so helped, and the defendant therefor was not negligent in failing to assist them. That being the sole act of negligence upon which the jury verdict was predicated, it entitles the defendant to judgment notwithstanding the verdict of the jury."

While the general proposition of law upon which the appellant relies may be conceded, it has no application to the situation herein.

The trial court by instruction No. 17 recited six specific acts of negligence attributable to the appellant, which the appellee claimed proximately caused her injuries. The special question, prepared by the appellant, was submitted to the jury by the court. It is to be noted that the question was carefully phrased in the *singular*.

Of the six specific acts of negligence set forth the jury selected No. 3, heretofore quoted, as the answer. The jury came as near answering the very limited question as it could have under the circumstances. There would have been no injury except for the failure of the appellant to assist the plaintiff and her grandchild, in some manner, as they alighted from the steps of the railroad car to the platform. The jury properly found there was a total failure to assist the appellee and her grandchild during the entire disembarkation process, and this was the negligence it found which proximately caused her injuries as defined in instruction No. 17. It is noted all of the specific acts of negligence alleged in the petition, except one, referred to *assistance* in some form or manner.

The identical point was presented to this court in *Muhn v. Schell,* 196 Kan. 713, 413 P. 2d 997. There a similar situation arose and the jury answered the limited question posed. In the opinion the court said:

"The appellant suggests that it is axiomatic in Kansas that a special finding that a defendant committed a certain act or acts exonerates him from all other acts charged. There is a place for the application of the rule (*Jones v. A., T. & S. F. Rly. Co.,* 148 Kan. 686, 85 P. 2d 15). However, we do not believe there is any place for its application here. Perhaps the question asked by the defendant was more objectionable than the answer given.

". . . We are inclined to the opinion that the jury came as near answering the very limited question as it could have under the circumstances. It was not asked for the negligent act or acts which constituted wantonness. It was asked for the wanton negligence which was the direct cause of the injury. There would have been no injury except for the improper right turn, although other contributing factors tended to infer wantonness." (pp. 717, 718.)

The appellant complains the trial court erred in giving instruction No. 16 to its prejudice.

Instruction No. 16 reads:

"The duty imposed upon common carriers to exercise the highest degree of care for the safety of their passengers, includes an obligation to provide facilities and assistance for alighting from the conveyance without danger where the facts and circumstances require such facilities and assistance."

Briefly stated, the appellant's position is that the phrase "without danger" used in instruction No. 16, in effect, placed it in the position of being an insurer of the appellee's safety.

Apparently, the appellant accepts instruction No. 15 as a correct statement of the law, no objection having been made. There the jury was specifically instructed that a common carrier is not an insurer of the safety of its passengers. Thus, even conceding instruction No. 16, standing alone, might be subject to the construction placed upon it by the appellant, instruction No. 15 eliminated the objection. Instructions given to a jury are to be construed together, and as such they fully informed the jury of the limitation on the appellant's liability to the appellee. We do not think the appellant was prejudiced by instruction No. 16 given to the jury.

The appellant next contends the doctrine of emergency submitted to the jury as instruction No. 18 was erroneous.

The instruction given is the standard "emergency" instruction taken verbatim from PIK 8.81. The appellant contends the evidence failed to disclose an emergency which would justify the charge to the jury; that the pattern instruction itself is erroneous because it fails to charge that the emergency must have been one that was real, not merely possible, inconsequential, imaginary or speculative; and that the emergency must have been created by the negligence of the appellant.

The evidence, heretofore discussed, discloses substantial and credible evidence to support the emergency instruction. The position of the appellee and her grandson on the steps of the railway car as they were moving to disembark, and the appellee's state of mind as to the emergency as she conceived it and reported in her testimony, were sufficient to authorize the trial court to submit the emergency instruction to the jury.

The appellant's contention that the pattern instruction itself is erroneous because it fails to charge that the emergency must have been one that was real, not merely possible, inconsequential, imaginary or speculative, confuses the law applicable under the doctrine of sudden emergency with the "rescue doctrine." (See *Holle v. Lake*, 194 Kan. 200, 398 P. 2d 300.) The appellee does not rely upon the "rescue doctrine."

The appellee, as custodian *in loco parentis* of her three and one-half year old grandson, was confronted with the hazardous situation in which her grandchild was placed through the negligence of the

appellant. This, in effect, was a hazardous situation suddenly confronting the appellee. Under these circumstances the jury could find the appellee was not guilty of contributory negligence because she may have made a mistake in the method adopted to alleviate the peril which existed through no fault of hers—that she was required to act suddenly, in an emergency, without opportunity for deliberation. Under the circumstances, instruction No. 18 correctly states the law as applied to the evidence in the case at bar, and it was not erroneous for the trial court to give the instruction.

Upon a careful review of the record, we cannot say the appellant was prejudiced by any of the rulings made by the trial court in this action.

The judgment of the lower court is affirmed.