**Sheila BURDETT, Plaintiff,**

v.

**HARRAH'S KANSAS CASINO CORP., et al., Defendants.**

**Nos. CIV.A. 02–2166–KHV, CIV.A. 03–2189–KHV.**

United States District Court, D. Kansas.

Dec. 10, 2003.

---

**1218**

Stephen B. Small, Kansas City, MO, for Plaintiff.

Glenn B. Brown, Kenneth E. Holm, Baty, Holm & Numrich, P.C., John G. Schultz, Franke, Schultz & Mullen, PC, Adam J. Prochaska, Darren K. Sharp, Laurence R. Tucker, Armstrong Teasdale LLP–Kansas City, Kansas City, MO, Michael A. Klutho, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, David Israel, Session, Fishman & Nathan, LLP, New Orleans, LA, Richmond M. Enochs, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Defendants.

*MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE*

VRATIL, District Judge.

This matter is before the Court on the *Motion For Summary Judgment* (Doc. # 88) in Case No. 02–2166 and the *Motion To Dismiss Case Number 03–2189* (Doc. # 95) which NCO Financial Systems, Inc. filed on June 26 and September 12, 2003, respectively; *Defendant Telecheck Ser-*

*vices, Inc.'s Motion To Dismiss* (Doc. # 97) filed September 12, 2003; *Sheila Burdett's Preliminary Response To NCO's Motion For Summary Judgment & Motion To Lift The Stay So That Discovery Can Be Conducted In Complete Response Thereto* (Doc. # 111) filed September 19, 2003; *Defendant Telecheck Services, Inc.'s Motion To Dismiss Case No. 03–2189* (Doc. # 5) filed September 22, 2003; and *Defendants Edward T. Burke & Associates, P.C., Edward T. Burke, Esq. And Creditors Interchange, Inc.'s Notice Of Motion And Motion For Summary Judgment* (Doc. # 109) filed October 24, 2003. For reasons stated below, the Court overrules plaintiff's motion, sustains in part the motions of NCO Financial and Telecheck to dismiss Case No. 03–2189, and sustains the remaining three motions.

*Procedural History*

On April 12, 2002, plaintiff filed suit against nine defendants in Case No. 02–2166: Harrah's Kansas Casino Corporation, Harrah's Operating Company, Incorporated and Harrah's Entertainment, Incorporated (collectively "Harrah's"); Edward T. Burke & Associates, PC and Edward T. Burke, Esq. (collectively "Burke"); Creditors Interchange, Incorporated ("CI"); NCO Financial Systems, Incorporated ("NCO"); Telecheck Systems, Incorporated ("Telecheck"); and Prairie Band Potawatomi Nation (the "Tribe"). In that case, plaintiff alleged that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.;* the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.;* and the Kansas Consumer Protection–Unconscionable Practice Act ("KCP–UPA"), K.S.A. § 50–626 *et seq.* Plaintiff also alleged that defendants committed intentional and negligent infliction of emotional distress, caus-

ing her husband, Clarence Burdett, to commit suicide.[1] In addition, under an unspecified Fair Credit Reporting Act, plaintiff sought to enjoin collection and set aside the gambling debts of Mr. Burdett, recover his gambling losses and delete from the Burdetts' credit records all adverse references to such debts.

On April 17, 2003, as special administrator for Mr. Burdett's estate, plaintiff filed a survivor action against the same nine defendants. *Complaint* (Doc. # 1) in Case No. 03–2189. That case also alleged that under an unspecified Fair Credit Reporting Act, plaintiff was entitled to enjoin collection and set aside the gambling debts of Mr. Burdett, recover his gambling losses and delete from the Burdetts' credit records all adverse references to such debts. It also repeated the allegations of the original complaint in Case No. 02–2166, *i.e.* that defendants violated the FDCPA, RICO, IGRA and KCP–UPA, and that defendants committed intentional and negligent infliction of emotional distress.[2] On June 5, 2003, the Court consolidated the two cases.

In Case No. 02–2166, on various dates between October 21 and December 19, 2002, all defendants except NCO filed mo-

tions to dismiss for lack of jurisdiction and/or failure to state a claim. On May 5, 2003, the Court sustained the motion by Harrah's and the Tribe, and sustained in part the motions by Burke, CI and Telecheck. *Memorandum And Order* (Doc. # 75). The Court dismissed plaintiff's claims against Harrah's and the Tribe for lack of jurisdiction. *See id.* **Because the complaints in Case Nos. 02–2166 and 03–2189 are essentially the same, the Court directs plaintiff to show cause in writing on or before December 16, 2003 why her claims against Harrah's and the Tribe in Case No. 03–2189 should not be dismissed for the same reasons.** As to the motions of Burke, CI and Telecheck, the Court sustained the motion to dismiss plaintiff's RICO claims and overruled without prejudice the motions to dismiss plaintiff's FDCPA claims. The Court also ordered plaintiff to file an amended complaint which specifically identified each FDCPA violation, the party who had committed the violation and the date of the violation, and to show cause in writing why the Court should not dismiss plaintiff's RICO claims against NCO. *Id.* at 23. In response, on May 16, 2003, plaintiff filed her *First Amended Complaint* (Doc. # 76)

1. *See Complaint For Damages, Declaratory Judgment, Injunction And Other Relief Arising From 1.) Violation Of Fair Debt Collection Practices Act[;] 2.) Racketeer Influenced Corrupt Organizations Act[;] 3.) Indian Reservation Gambling Act[;] 4.) Kansas Consumer Protection–Unconscionable Practice Act[;] 5.) Action To Set Aside Gambling Debts, To Enjoin Collection Thereof And To Recover Gambling Losses[;] 6.) Intentional And Negligent Infliction Of Emotional Distress Resulting In Wrongful Death* ("*Complaint*") (Doc. # 1) filed April 12, 2002.

2. The complaints in Case Nos. 02–2166 and 03–2189 are essentially the same. The complaint in Case No. 03–2189, however, (1) attaches a copy of the "letters of special administration," (2) alleges that the district court of Geary County, Kansas appointed plaintiff on

April 18, 2003, (3) cites several Kansas statutes regarding wrongful death actions; and (4) does not allege diversity jurisdiction. Count Five of Case No. 03–2189, which alleges negligent and intentional infliction of emotional distress, does not enumerate plaintiff's alleged losses, but alleges that "both Mr. Burdett and Mrs. Burdett and Mr. Burdett's heirs suffered the loss of the continuing support, companionship, society [etc.]" Plaintiff's first case, Case No. 02–2166, seeks costs and fees which plaintiff incurred "as private attorney general" and "such other and further relief as the Court deem appropriate" in connection with her declaratory judgment and RICO claims. Plaintiff does not seek such relief in Case No. 03–2189, but asks the Court to "declare a forfeiture of the Harrah's gaming operation and proceeds thereof."

and *Motion To Amend RICO Claim* (Doc. # 77). Plaintiff's first amended complaint did not include claims under RICO, IGRA or the KCP–UPA. It alleged only three claims: (1) that Burke, CI, Telecheck and NCO violated the FDCPA; (2) that Burke, CI, Telecheck and NCO committed intentional and negligent infliction of emotional distress; and (3) that under some unspecified Fair Credit Reporting Act, plaintiff was entitled to recover Mr. Burdett's gambling losses from Burke, CI, Telecheck and NCO, and defendants were required to set aside Mr. Burdett's gambling debt and delete from the Burdetts' credit records all adverse references to such debt.[3] *First Amended Complaint* (Doc. # 76) filed May 16, 2003.

On May 27, 2003, Telecheck filed a motion to dismiss plaintiff's amended complaint in Case No. 02–2166. *Defendant Telecheck Services, Inc.'s Motion To Dismiss* (Doc. # 79). On June 4, 2003, Burke and CI renewed their motion to dismiss in that case. *Defendants Creditors Interchange, Inc., Edward T. Burke & Associates, P.C. And Edward T. Burke, Esq.'s Notice Of Renewed Motion To Dismiss* (Doc. # 82). On June 12, 2003, plaintiff sought an extension of time until June 20, 2003, to reply to defendants' motions. *Motion For Extension Of Time Within Which To Respond To Outstanding Defense Motions* (Doc. # 85). The Court overruled plaintiff's motion for extension of time, noting that one of plaintiff's responses was not even due until June 27, 2003. *Order* (Doc. # 87) filed June 18, 2003. On June 26, 2003, NCO filed a motion for summary judgment in Case No. 02–2166. *Motion For Summary Judgment* (Doc. # 88). Plaintiff's response was initially due on July 21, 2003.

On July 17, 2003, plaintiff filed a *Notice Of Injury To Counsel* (Doc. # 90) which asked the Court to stay proceedings for 30 days because counsel had sustained a serious head injury in an automobile accident on July 9, 2003. On September 5, 2003, the Court sustained in part the motions to dismiss by Burke, CI and Telecheck and extended to September 19, 2003, plaintiff's deadline to respond to the NCO motion for summary judgment. As to the motions to dismiss, the Court held that plaintiff had no actionable claim (1) that Burke, CI and Telecheck violated the FDCPA by placing telephone calls to the Burdett residence or (2) that Burke and CI intentionally and negligently inflicted emotional distress on plaintiff. Consequently, the remaining claims in Case No. 02–2166 were (1) that Burke, CI, Telecheck and NCO violated the FDCPA by sending specified letters to the Burdett residence; (2) that NCO violated the FDCPA by placing numerous telephone calls to the Burdett residence; (3) that Telecheck and NCO intentionally and negligently inflicted emotional distress on plaintiff; and (4) that under some unspecified Fair Credit Reporting Act, Burke, CI, Telecheck and NCO were required to set aside Mr. Burdett's gambling debt, reimburse plaintiff for his gambling losses, and delete from the Burdetts' credit records all adverse references to such debt.

On September 19, 2003, plaintiff responded to the NCO motion for summary judgment and asked the Court to lift the stay of discovery which Magistrate Judge James P. O'Hara had entered on March 11, 2003. *Sheila Burdett's Preliminary Response To NCO's Motion For Summary Judgment & Motion To Lift The Stay So That Discovery Can Be Conducted In Complete Response Thereto ("Plaintiff's Response")* (Doc. # 99).

On September 12 and 22, 2003, NCO and Telecheck filed motions to dismiss

---

**3.** Presumably the latter claim is under the Kansas Fair Credit Reporting Act, K.S.A. §§ 50–701 *et seq.*, or the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1601 *et seq.*

Case No. 03–2189. Telecheck also filed a motion to dismiss Case No. 02–2166. On October 14, 2003, the Court granted plaintiff until October 16, 2003 to respond to these three motions. *Order* (Doc. # 106). Plaintiff did not respond, however, and the Court considers all three motions to be unopposed.

On October 24, 2003, Burke and CI filed *Defendants Edward T. Burke & Associates, P.C., Edward T. Burke, Esq. And Creditors Interchange, Inc.'s Notice Of Motion And Motion For Summary Judgment* (Doc. # 109) in Case No. 02–2166. Again, plaintiff did not respond.

## I. Case No. 02–2166

### A. Plaintiff's Motion To Lift The Stay Of Discovery

On March 11, 2003, Judge O'Hara stayed all proceedings in Case No. 02–2166 pending the resolution of defendants' then-pending motions to dismiss, *i.e.* Docs. # 21, 41 and 46. *Order* (Doc. # 73) at 2. Plaintiff asks the Court to lift that stay. The Court resolved the subject motions on May 5, 2003, however, *see Memorandum And Order* (Doc. # 75), and discovery has not been stayed since that time.[4] The Court therefore overrules plaintiff's motion as moot.

### B. NCO's Motion For Summary Judgment (Doc. # 88)

Although plaintiff timely responded to NCO's motion for summary judgment, she has not complied with D. Kan. Rule 56.1(b), which requires that (1) a memorandum in opposition contain a concise statement of material facts as to which the nonmovant contends a genuine issue exists, (2) each dispute be numbered by paragraph and refer with particularity to the record, and (3) when the nonmovant relies on facts not in movant's memorandum, each additional fact be listed in a separately numbered paragraph, and supported by record references. Nevertheless, the moving party bears the initial burden of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden shifts to the non-moving party only if the summary judgment motion is properly supported. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (cited in *Reed v. Bennett,* 312 F.3d 1190, 1194–95 (10th Cir.2002)). The Court must "first examin[e] the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and [that] the moving party is entitled to judgment as a matter of law." *Reed,* 312 F.3d at 1194–95.

#### 1. Undisputed Facts

Plaintiff does not controvert any of NCO's facts. The following facts are therefore undisputed or deemed admitted.[5]

Mr. Burdett gambled at Harrah's Prairie Band Casino (the "casino") in Mayetta,

---

4. On June 4, 2003, Burke and CI asked the Court to stay discovery pending the resolution of their motion to dismiss. *See Defendants Creditors Interchange, Inc., Edward T. Burke & Associates, P.C. And Edward T. Burke, Esq.'s Notice Of Renewed Motion To Dismiss* (Doc. # 82). On July 17, 2003, plaintiff asked the Court to stay proceedings in both cases for 30 days. *See Notice Of Injury To Counsel* (Doc # 90). As noted above, on September 5,

2003, the Court sustained in part the motion to dismiss by Burke and CI and extended to September 19, 2003, plaintiff's deadline to respond to the NCO motion for summary judgment. *Memorandum And Order* (Doc. # 94). The Court did not stay proceedings.

5. "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless spe-

Kansas. Harrah's accepted numerous personal checks from Mr. Burdett which were dishonored on account of insufficient funds. Mr. Burdett used the checks to purchase casino chips, or to get cash to purchase casino chips at the gaming tables. Harrah's forwarded the dishonored checks to Telecheck, which retained NCO to collect some of them.

Between January 31, 2000 and November 19, 2001, NCO received numerous collection accounts from Telecheck which related to these dishonored checks. On April 20, 2000, Mr. Burdett settled six NCO accounts for $322.00. After the settlement, Telecheck sent NCO more collection accounts on Mr. Burdett. When NCO received each referral, it sent a collection letter to Mr. Burdett. Each letter contained the validation notice required by 15 U.S.C. § 1692g(a).[6] *Affidavit Of Lisa Signore* ¶ 9, Exhibit to *Memorandum In Support Of Motion For Summary Judgment* (Doc. # 89) filed June 26, 2003. During the NCO collection efforts, neither Mr. Burdett nor plaintiff complained that NCO was trying to collect an unlawful debt. Nor did they dispute or request validation of any debt. NCO last called the Burdett home on June 26, 2001. Unbeknownst to NCO, Mr. Burdett had committed suicide two months earlier, on April 19, 2001.[7]

NCO addressed all correspondence to Mr. Burdett; it never addressed collection correspondence to plaintiff. NCO last sent correspondence to Mr. Burdett on December 1, 2001. On December 5, 2001, NCO received a letter from plaintiff's attorney dated November 15, 2001.[8] That letter stated:

---

cifically controverted by the statement of the opposing party." *Vasquez v. Ybarra*, 150 F.Supp.2d 1157, 1160 (D.Kan.2001) (citing *Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir.1996)); *see also* D. Kan. Rule 56.1.

6. Section 1692g(a) provides that:
[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

7. On April 30 and June 25, 2001, plaintiff sent letters to Telecheck which stated that Mr. Burdett had died on April 19, 2001. *Affidavit Of Sheila Burdett* (Doc. # 100) filed September 20, 2003, at 3–4. Plaintiff did not send any such notice to NCO.

8. On September 20, 2003, one day after the deadline for her response to NCO's motion for summary judgment, plaintiff filed her affidavit without leave of Court and without seeking an extension of time. NCO asks the Court to disregard it as untimely. Under D. Kan. Rule 7.4, failure to file a response within the time specified constitutes waiver of the right to thereafter file such a response, except upon a showing of excusable neglect. The Supreme Court analyzed the excusable neglect standard in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In determining whether the excusable neglect standard is met, courts should consider all relevant circumstances, including "(1) the danger of prejudice to the nonmoving party, (2) the length

Please be advised that this office represents Sheila Burdett, widow of Clarence W. Burdett. Mr. Burdett died on April 19, 2001. A copy of his Certificate of Death is enclosed.

Since Clarence died having no assets there will be no administration or probate of his estate. Accordingly, since there will be no estate you will not be paid for [sic] any monies that Clarence died owing your client, Telecheck Recovery Services.

Letter attached as Exhibit 1 to *Affidavit Of Lisa Signore*. This was NCO's first notice of Mr. Burdett's death.

Count I of plaintiff's first amended complaint alleges that NCO violated the FDCPA by (1) engaging in harassing, abusive and oppressive conduct in violation of 15 U.S.C. § 1692d, by sending 23 letters between August 4 and December 1, 2001,[9] and making numerous calls to the Burdett residence;[10] (2) refusing to cease communications with the Burdetts after plaintiff asked them to and after plaintiff refused to pay Mr. Burdett's debt, in violation of 15 U.S.C. § 1692c(c);[11] (3) making false representations concerning the character, amount and legal status of the debts and threatening to take legal action to collect the debts in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(5); and (4) using unfair and unconscionable means to collect debts from plaintiff in violation of 15 U.S.C. § 1692f(1).[12] *First Amended Complaint* (Doc. # 76) at 7–8.

Count II asserts that NCO committed negligent and intentional infliction of emotional distress which resulted in wrongful death. Specifically, it alleges that NCO (1) used harassment and oppression to collect debts; (2) violated Mr. Burdett's privacy by contacting plaintiff; and (3) "pervasively utilized the mail and phone and databases" to harass and oppress plaintiff in an attempt to collect patently unenforceable gambling debt. Plaintiff claims that NCO thereby caused plaintiff to file for divorce

of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489. NCO does not argue that consideration of plaintiff's affidavit will be prejudicial or that plaintiff's one-day delay had a negative impact on the judicial process. *See Ledbetter v. Kan. Dep't of Soc. & Rehab. Services*, No. 99–2261–KHV, 2000 WL 206208, at *3 (D.Kan. Jan. 3, 2000) (one month delay not significant). Further, the record contains no evidence that plaintiff acted in bad faith. Except for those portions which are conclusory, the Court will therefore consider plaintiff's affidavit. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995).

Plaintiff's affidavit references a letter dated November 15, 2001, in which her attorney notified NCO of Mr. Burdett's death. *Affidavit Of Sheila Burdett* (Doc. # 100) filed September 20, 2003. NCO received that letter on December 5, 2001. *See Affidavit Of Lisa Signore* at 2, Exhibit to *Memorandum In Support* (Doc. # 89).

9. Plaintiff's complaint concerns 23 letters that NCO sent after Mr. Burdett died but before it learned of his death: one on August 4, ten on October 31, four on November 2, three on November 10, two on November 20, and three on December 1, 2001.

10. The first amended complaint does not specifically identify any telephone call.

11. In the first amended complaint, plaintiff does not allege when or how she asked NCO to cease communications. As noted above, however, plaintiff's attorney sent NCO a letter which notified it of Mr. Burdett's death.

12. In its order of May 5, 2003, the Court noted that plaintiff referred to code sections which do not exist but assumed that plaintiff intended to cite FDCPA sections. *See Memorandum And Order* (Doc. # 75) at 14 n. 9. In her first amended complaint, plaintiff continues citing the code sections which do not exist. *See First Amended Complaint* (Doc. # 76) at 7–8. Again, the Court assumes that she intends to cite the FDCPA sections listed above.

and Mr. Burdett to commit suicide. *Id.* at 10–12.

Count III alleges that under an unspecified Fair Credit Reporting Act, plaintiff is entitled to recover Mr. Burdett's gambling losses from NCO, and that NCO is required to set aside Mr. Burdett's gambling debt and delete from the Burdetts' credit records all adverse references to such debt. *Id.* at 13.

## 2. Analysis

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

### a. The FDCPA

As stated above, Count I of plaintiff's first amended complaint alleges that NCO violated the FDCPA by (1) sending 23 letters after Mr. Burdett died but before it learned of his death and placing numerous calls to the Burdett residence, and thus engaging in harassing, abusive and oppressive conduct in violation of 15 U.S.C. § 1692d; (2) refusing to cease communications with the Burdetts after plaintiff asked them to and after plaintiff refused to pay Mr. Burdett's debt, in violation of 15 U.S.C. § 1692c(c); (3) making false representations concerning the character,

amount and legal status of the debt and threatening to take legal action to collect the debt in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(5); and (4) using unfair and unconscionable means to collect debt from plaintiff in violation of 15 U.S.C. § 1692f(1). *First Amended Complaint* (Doc. # 76) at 7–8.

While the amended complaint is too conclusory to be entirely clear on this point, plaintiff's entire FDCPA claim is apparently predicated on the 23 letters which NCO sent Mr. Burdett after he died, but before NCO learned of his death, and the unspecified telephone calls. Plaintiff's first amended complaint alleges that: (1) NCO was a "debt collector" under 15 U.S.C. § 1692a(6) because it called the Burdett residence and used the United States mail to send collection demands to plaintiff, *First Amended Complaint* ¶ 20; (2) NCO engaged in "communication" under 15 U.S.C. § 1692a(2) by sending numerous letters to plaintiff, *id.* ¶ 23; (3) NCO violated 15 U.S.C. § 1692d by calling the Burdett residence and sending pervasive written communications which were harassing, abusive and oppressive; and (4) NCO violated Section 1692c(c) by refusing to cease such communications, *id.* ¶ 27. Plaintiff alleges no other conduct by NCO. The Court must therefore conclude that the NCO telephone calls and letters constitute the sole basis for plaintiff's FDCPA claim.

NCO argues that it is entitled to summary judgment on the FDCPA claim because (1) it did not attempt to collect a gambling debt; (2) even if the debt was unlawful, Mr. Burdett did not dispute it or request validation; and (3) plaintiff does not have standing to sue. *Memorandum In Support Of Motion For Summary Judgment* ("*Memorandum In Support*") (Doc. # 89) filed June 6, 2003. Plaintiff

responds that (1) NCO was attempting to collect gambling debts and gambling debts are unenforceable in Kansas, (2) plaintiff disputed liability for the debts and whether Mr. Burdett did so is immaterial, and (3) plaintiff has standing to sue because NCO sent her at least 20 letters after Mr. Burdett's death. *Sheila Burdett's Preliminary Response To NCO's Motion For Summary Judgment & Motion To Lift The Stay So That Discovery Can Be Conducted In Complete Response Thereto* ("*Plaintiff's Response*") (Doc. # 99) filed September 19, 2003.

### i. Whether NCO Attempted To Collect Gambling Debts

█ NCO asks the Court to take judicial notice of the fact that gambling is lawful in Kansas and argues that since Harrah's operates a lawful casino in Kansas, any debt which Mr. Burdett incurred was incurred lawfully and is enforceable as a matter of law. NCO also argues that it merely attempted to collect dishonored checks and that it cannot be held liable for the fact that Mr. Burdett used the proceeds to gamble. Plaintiff responds that gambling is illegal in Kansas and that "enforcement of a gambling debt is against public policy and that the courts will not aid in the enforcement of such debts." *Plaintiff's Response* (Doc. # 99) at 1.

Inexplicably, plaintiff's argument overlooks the history of Indian gaming, the 1974 and 1986 amendments to Article 15, Section 3 of the Kansas Constitution, the Kansas Supreme Court interpretation of those amendments and current Kansas law related to Indian gaming. Plaintiff cites no legal or factual reason why casino gambling is illegal in Kansas, and the Court holds that as a matter of law Class III gambling on tribal property in Kansas, in

accordance with a valid Tribal–State Compact, is legal.[13] *See* Kan. Const. art. 15, sec. 3; K.S.A. §§ 21–4303 through 4307; K.S.A. § 74–9801 *et seq.*

Plaintiff argues that even if gambling is legal on tribal property, the checks are not subject to collection off tribal property.[14] The Court need not address this argument because, as noted below, plaintiff does not have standing to complain of the alleged FDCPA violations.

### ii. Dispute Of Debt Or Validation Request

 NCO argues that even if the debts were unlawful, it is entitled to summary judgment because Mr. Burdett did not dispute them or request validation under the

---

**13.** In July of 1859, the Wyandotte Convention adopted Article 15, Section 3 of the Kansas Constitution; the electors ratified the provision later that year. *See State v. Finney*, 254 Kan. 632, 867 P.2d 1034 (1994). In 1974, Kansas voters amended the Constitution to allow bingo games to be conducted by bona fide nonprofit religious, charitable, fraternal, educational and veterans organizations, Kan. Const. art. 15, sec. 3a (L.1974, ch. 461), and in 1986 Kansas voters amended the Constitution to allow parimutuel betting in horse and dog racing and to authorize the State to own and operate a lottery. Kan. Const. art. 15, secs. 3b and 3c.

On the national front, in 1987, the United States Supreme Court held that the State of California did not have jurisdiction to prohibit casino gambling on Indian reservations; therefore the State could not restrict Indian gaming under State criminal codes. *Cal. v. Cabazon Band of Mission Indians*, 480 U.S. 202, 221–22, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). In 1988, Congress responded by passing IGRA. *See* 25 U.S.C. § 2710 *et seq.* Under IGRA, a state can limit Indian casinos to the type of gaming allowed by the state and tribes must negotiate compacts with the state regarding the scope of authorized gaming and the state's role in Indian gaming. *Id.* In addition, IGRA set guidelines governing the type of compacts that can be negotiated, and authorized the National Indian Gaming Commission to oversee certain aspects of Indian gaming. *Id.*

After the enactment of IGRA, four Kansas tribes, including the Tribe, began negotiating with the State of Kansas for an approved compact. Former Governor Joan Finney signed the first compact and the Attorney General filed a lawsuit against her, asserting that she did not have the authority to enter a compact on behalf of the State without legislative approval. In January of 1994, in *State v. Finney*, the Kansas Supreme Court agreed with the Attorney General. The Kansas Supreme Court held that Article 15, section 3 of the Kansas Constitution prohibited only lotteries and the sale of lottery tickets, but that prohibition did not include casino gambling. 254 Kan. at 667–68, 867 P.2d at 1057. The Kansas Supreme Court nonetheless held that Kansas criminal statutes—K.S.A. §§ 21–4303 through 4307—prohibited casino gambling. *Id.* at 668, 867 P.2d at 1057.

After the Kansas Supreme Court decision in *State v. Finney*, the four tribes began negotiating compacts with the State of Kansas. In July of 1994, the Kansas legislature amended K.S.A. § 21–4302 to specifically exclude tribal gaming in the definitions of a "bet," Section 21–4302(a)(7), and a "gambling device," Section 21–4302(d)(7)(D). In 1995, the Kansas legislature approved, and former Governor Bill Graves signed, tribal-state gaming compacts for each of the four tribes. By October of 1995, the Bureau of Indian Affairs had approved all four compacts. In 1996, by executive order, the State Gaming Agency was established to fulfill the State's obligations under tribal-state gaming compacts. In 1996, the Kansas Legislature enacted the Tribal Gaming Oversight Act, K.S.A. § 74–9801 *et seq.*, which officially established the State Gaming Agency which incurred responsibility for oversight of Class III gaming conducted under tribal-state compacts.

**14.** Plaintiff relies on Connecticut, Nevada and Pennsylvania law for the proposition that checks used to finance gambling are unenforceable. *E.g.*, *Casanova Club v. Bisharat*, 189 Conn. 591, 458 A.2d 1 (1983), *Nat'l Recovery Sys. v. Bryer*, 352 Pa.Super. 274, 507 A.2d 1226 (1986), and *Joffe v. Miller*, 1927 WL 5719 (Pa.Com.Pl.1927).

FDCPA. Specifically, NCO argues that it had no reason to believe that the debts were illegal, and it is therefore not subject to liability. Plaintiff responds that she disputed liability for the debts and that whether Mr. Burdett did so is immaterial.

The FDCPA prescribes a process of communication and verification which requires a debt collector to provide written notice concerning the debt, and when the consumer timely disputes a debt, to suspend collection effort until verification is obtained and sent to the consumer.[15] 15 U.S.C. § 1692g. The FDCPA expressly provides, however, that "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer." 15 U.S.C. § 1692g(c).

NCO's argument boils down to a claim that it had no reason to believe that collection of Mr. Burdett's debts would violate the FDCPA. NCO is not entitled to summary judgment, however, just because the Burdetts did not dispute the validity or request verification of the debts.

### iii. Standing To Assert FDCPA Claims

NCO argues that it is entitled to summary judgment because plaintiff lacks standing to assert an FDCPA claim. Specifically, NCO argues that the one-year statute of limitations has run on any

FDCPA claim predicated on telephone calls because its last conversation with plaintiff was on June 26, 2000—more than one year before plaintiff filed suit on April 12, 2002. Plaintiff does not respond to this argument, and the Court finds that it is well taken. NCO also argues that plaintiff lacks standing because it addressed all letters to Mr. Burdett, not plaintiff. *Memorandum In Support* (Doc. # 89) at 12–13.

The undisputed fact is that NCO addressed all collection letters to Mr. Burdett. Unless plaintiff has a legal status which entitles her to stand in his shoes, she ordinarily does not have standing to assert a FDCPA violation based on collection efforts aimed at her spouse. *Dewey v. Associated Collectors Inc.*, 927 F.Supp. 1172, 1174 (W.D.Wis.1996) (even if plaintiff reviewed letters, FDCPA does not allow her to recover for violations in letter addressed to someone else). Plaintiff cites no evidence that NCO directed letters at her. The Court therefore sustains NCO's motion as to plaintiff's claim that it violated the FDCPA by sending collection letters to her.

### b. Negligent And Intentional Infliction Of Emotional Distress

NCO argues that it is entitled to summary judgment on plaintiff's claim for negligent infliction of emotional distress because plaintiff suffered no physical injury, on plaintiff's claim for intentional infliction

---

**15.** Section 1692g(b) directs that:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the

debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Plaintiff has not alleged that NCO failed to comply with the requirements of Section 1692g, so this issue is not before the Court.

of emotional distress because it addressed all correspondence to Mr. Burdett and it never placed any harassing telephone calls to the Burdett residence.

### i. Negligent Infliction Of Emotional Distress

■ Kansas law has long prohibited any recovery for negligent infliction of emotional distress which is not accompanied by or does not result in physical injury. *E.g., Humes v. Clinton,* 246 Kan. 590, 598, 792 P.2d 1032, 1038 (1990); *Anspach v. Tomkins Indus., Inc.,* 817 F.Supp. 1499, 1509 (D.Kan.1993); *Payne v. Gen. Motors Corp.,* 731 F.Supp. 1465, 1474 (D.Kan. 1990). The purpose of the physical injury rule is to guard against fraudulent or exaggerated claims, *Maddy v. Vulcan Materials Co.,* 737 F.Supp. 1528, 1534 (D.Kan. 1990); it also recognizes that emotional distress is a common experience in life and is usually trivial, *Freeman v. Kan. State Network, Inc.,* 719 F.Supp. 995, 1001 (D.Kan.1989). Plaintiff cites no evidence that she suffered physical injury as a result of NCO collection efforts. Plaintiff's claim therefore fails as a matter of law. The Court sustains NCO's motion for summary judgment on this claim.

### ii. Intentional Infliction Of Emotional Distress

■ Kansas recognizes the tort of intentional infliction of emotional distress. *Moore v. State Bank of Burden,* 240 Kan. 382, 388, 729 P.2d 1205 (1986). A plaintiff claiming intentional infliction of emotional distress must meet two threshold requirements by showing that (1) defendant's conduct "may reasonably be regarded as so extreme and outrageous as to permit re-

covery;" and (2) "plaintiff's emotional distress is so extreme and severe that no reasonable person should be expected to endure it." *Rupp v. Purolator Courier Corp.,* 790 F.Supp. 1069, 1073 (D.Kan.1992) (citing *Roberts v. Saylor,* 230 Kan. 289, 292–93, 637 P.2d 1175 (1981)); *see also Bailey v. Kenney,* 791 F.Supp. 1511, 1527 (D.Kan.1992). Mere insults, threats or annoyances do not rise to the level of outrage. The required threshold for an outrage claim is necessarily high to separate meritorious claims from those based on trivialities or hyperbole. *See Fletcher v. Wesley Med. Ctr.,* 585 F.Supp. 1260, 1261–62 (D.Kan.1984).

■ As a matter of law, plaintiff does not meet these requirements. Plaintiff cites no evidence of conduct which could be regarded as extreme and outrageous. The record reveals that NCO addressed its collection correspondence solely to Mr. Burdett and only before it learned of his death. The record contains no evidence that NCO placed any harassing telephone calls to the Burdett residence.[16] No reasonable jury would regard such conduct as extreme and outrageous. The Court therefore sustains NCO's motion for summary judgment on plaintiff's claim.

### c. Fair Credit Reporting Act Claim

Count III alleges that under an unspecified Fair Credit Reporting Act, plaintiff is entitled to recover Mr. Burdett's gambling losses from NCO, and that NCO is required to set aside Mr. Burdett's gambling debt and delete from the Burdetts' credit records all adverse references to such debt. *First Amended Complaint* at 13. Specifically, Count III alleges that (1) Mr. Burdett paid gambling debts to NCO; (2)

---

**16.** The record indicates that NCO called the Burdett residence once, on June 26, 2001.

gambling debts are void and unenforceable as a matter of public policy in Kansas; (3) plaintiff is therefore entitled to recover all funds which Mr. Burdett transferred to NCO; (4) plaintiff is entitled to a declaration that she is not obligated to pay any gambling debt which NCO is attempting to collect; (5) any gambling debt should be deleted from the Burdetts' credit record; and (6) NCO should cease collection actions on any gambling debt.

The Kansas Fair Credit Reporting Act, K.S.A. §§ 50–701 *et seq.,* is virtually identical to the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* The purpose of both is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." K.S.A. § 50–701(b); 15 U.S.C. § 1681(b). The statutes enumerate permissible purposes for consumer credit reports, K.S.A. § 50–703 and 15 U.S.C. § 1681b, and requirements for consumer reporting agencies, K.S.A. § 50–704 and 15 U.S.C. § 1681c. They also outline procedures for disputing the accuracy of consumer reports, K.S.A. § 50–710 and 15 U.S.C. § 1681i, and provide penalties for negligent and willfull noncompliance, K.S.A. § 50–716 and 15 U.S.C. § 1681o, and K.S.A. § 50–715 and 15 U.S.C. § 1681n.

NCO argues that it is entitled to summary judgment on plaintiff's Fair Credit Reporting Act claim because it was attempting to collect dishonored checks, not gambling debts, and because Mr. Burdett voluntarily participated in the allegedly illegal gambling, plaintiff is estopped from

recovery on account of his unclean hands. Plaintiff responds that she is entitled to recover funds transferred to NCO because (1) gambling debts are unenforceable in Kansas; (2) collection of gambling debt therefore violates public policy; and (3) "to the extent Kansas adopted the common law of England ... all notes and similar instruments, for reimbursing or paying any money knowingly lent or advanced to gamble with should be utterly void, frustrate, and of no effect." *Plaintiff's Response* at 15.

As noted, plaintiff presents no evidence or relevant legal authority for the proposition that Mr. Burdett's checks are uncollectable because he used the proceeds to participate in casino gambling. Moreover, plaintiff does not allege that NCO is a credit reporting agency and it is not clear how plaintiff's complaints give rise to a claim under the Kansas Fair Credit Reporting Act or the federal Fair Credit Reporting Act. The Court overrules NCO's motion for summary judgment, however, which does not squarely address any provision of either Fair Credit Reporting Act. The Court does direct plaintiff to show cause in writing on or before **December 16, 2003** why her claims under the Fair Credit Reporting Act (against Burke, CI and Telecheck, as well as NCO) should not be dismissed for failure to state a claim.

## C. Motion For Summary Judgment By Burke And CI (Doc. # 109)

As noted above, the claims which remain against Burke and CI in Case No. 02–2166 are plaintiff's claims that (1) Burke sent one letter to the Burdett residence on October 31, 2001 and CI sent 11 letters to the Burdett residence—six on October 30, three on November 12, and two on November 23, 2001, thus engaging in harassing,

abusive and oppressive conduct in violation of 15 U.S.C. § 1692d; (2) Burke and CI violated 15 U.S.C. § 1692c(c) when they refused to cease communications with the Burdetts after plaintiff asked them to and refused to pay Mr. Burdett's debt; (3) Burke and CI violated 15 U.S.C. §§ 1692e(2)(A) and 1692e(5) when they made false representations concerning the character, amount and legal status of the debts and threatened to take legal action to collect them; (4) Burke and CI violated 15 U.S.C. § 1692f(1) when they used unfair and unconscionable means to collect debts from plaintiff; and (5) under some unspecified Fair Credit Reporting Act, plaintiff is entitled to recover Mr. Burdett's gambling losses from Burke and CI, and that they are required to set aside Mr. Burdett's gambling debts and delete from the Burdetts' credit records all adverse references to his gambling debts.

### 1. FDCPA Claim

As stated above, in its order of September 5, 2003, the Court dismissed plaintiff's claims that Burke and CI had violated the FDCPA by placing numerous calls to the Burdett residence. Plaintiff's remaining FDCPA claim is apparently predicated on collection letters which Burke sent on October 31, 2001 and which CI sent between October 30 and November 23, 2001. Plaintiff's first amended complaint alleges that: (1) Burke and CI were "debt collectors" under 15 U.S.C. § 1692a(6) because they used the United States mail to send collection demands to plaintiff, *First Amended Complaint* ¶ 20; (2) Burke and CI engaged in "communication" under 15 U.S.C. § 1692a(2) by sending numerous letters to plaintiff, *id.* ¶ 23; (3) Burke and CI violated 15 U.S.C. § 1692d by sending pervasive written communications which were harassing, abusive and oppressive; and (4)

Burke and CI violated Section 1692c(c) by refusing to cease such communications, *id.* ¶ 27. Plaintiff alleges no other conduct by Burke and CI. The Court must therefore conclude that the Burke and CI letters constitute the sole basis for plaintiff's claim that Burke and CI made false representations concerning the character, amount and legal status of the debt, threatened to take legal action to collect the debt in violation of 15 U.S.C. §§ 1692e(2)(A) and 1692e(5), and used unfair and unconscionable means to collect debt from plaintiff in violation of 15 U.S.C. § 1692f(1).

Burke and CI seek summary judgment on these remaining claims. Specifically, they argue that (1) plaintiff has no valid FDCPA claim because they never addressed collection letters to plaintiff and (2) she did not request that they cease collection efforts. *Memorandum In Support Of Summary Judgment* (Doc. # 110) at 8. Plaintiff has not responded to Burke and CI's motion for summary judgment and pursuant to D. Kan. Rule 7.4, "[i]f a respondent fails to file a response ... the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." *See Hughes v. SSI*, 2002 WL 922129, *1 (D.Kan. Apr. 18, 2002). Nonetheless, summary judgment is not proper merely because the nonmovant failed to file a response. *See Reed*, 312 F.3d at 1194. The Court must determine whether judgment for the moving party is appropriate under Rule 56, Fed.R.Civ.P. Essentially, the inquiry is whether the facts asserted and supported in the summary judgment motion entitle the moving party to judgment as a matter of law.

The memorandum in support of defendants' motion for summary judgment does

not fully comply with D. Kan. Rule 56.1(a). Specifically, defendants do not present their statement of material facts in numbered paragraphs, they do not always refer with particularity to those portions of the record upon which they rely, and some facts are presented for the first time in the argument section of the brief. The Court ignores any assertions which are not properly supported, and generally does not consider factual assertions which are included only in the argument section of the briefs and not in the statements of fact. *See Tomita v. Univ. of Kan. Med. Ctr.* 2003 WL 1460367, *7 (D.Kan. Mar. 20, 2003). Burke and CI do support some of their factual assertions, however, and the Court will consider those assertions which are properly supported.

For purposes of this motion, the undisputed facts are as follows: Mr. Burdett cashed personal checks at the casino. In exchange for the checks, Harrah's gave him cash which he was free to spend as he chose. Some of the checks were dishonored and Harrah's forwarded them to Telecheck, which retained Burke and CI to collect them. Burke and CI did not address or direct any collection letter to plaintiff, and they did not receive correspondence from plaintiff which advised them to cease collection efforts for any debt.

As noted, Burke and CI argue that because they did not address any letters to plaintiff, she lacks standing to complain that they violated the FDCPA. *Dewey,* 927 F.Supp. 1172. For reasons already stated, the Court agrees. The record conclusively reveals that Burke or CI did not direct letters to plaintiff. The Court therefore sustains their motion as to plaintiff's claim that they violated the FDCPA by sending collection letters to her.

## 2. Fair Credit Reporting Act Claim

Plaintiff's Fair Credit Reporting Act claim alleges plaintiff is entitled to recover Mr. Burdett's gambling losses from Burke and CI, and that Burke and CI are required to set aside Mr. Burdett's gambling debt and delete from the Burdetts' credit records all adverse references to such debt. *First Amended Complaint* at 13. Specifically, Count III alleges that (1) Mr. Burdett paid gambling debts to Burke and CI; (2) gambling debts are void and unenforceable as a matter of public policy in Kansas; (3) plaintiff is therefore entitled to recover all funds which Mr. Burdett transferred to Burke and CI; (4) plaintiff is entitled to a declaration that she is not obligated to pay any gambling debt which Burke and CI are attempting to collect; (5) any gambling debt should be deleted from the Burdetts' credit record; and (6) Burke and CI should cease collection actions on any gambling debt. Burke and CI seek summary judgment, arguing that plaintiff has no valid claim because they did not violate the FDCPA, and the Court therefore has no reason to force them to return property or funds to plaintiff. Burke and CI also argue that plaintiff has no evidence that they reported Mr. Burdett's gambling debt on plaintiff's credit report, and that they therefore should not be ordered to delete all references from plaintiff's credit report.

As noted above, plaintiff has not responded to defendants' motion for summary judgment. At the same time, the Court is not convinced that defendants' motion, which does not squarely address any identified provision of any Fair Credit Reporting Act, has demonstrated their entitlement to summary judgment. For the reasons stated above, the Court therefore overrules defendants' motion for summary

judgment but directs plaintiff to show cause in writing on or before **December 16, 2003** why her claims under the Fair Credit Reporting Act should not be dismissed for failure to state a claim.

### D. Motion To Dismiss Of Telecheck (Doc. # 97)

As stated above, on September 5, 2003, the Court dismissed plaintiff's claims against Burke and CI for negligent and intentional infliction of emotional distress. *Memorandum And Order* (Doc. # 94) in Case No. 02–2166. Telecheck asks the Court to dismiss those claims against it, arguing that the analysis in the Court's order of September 5, 2003, disposes of plaintiff's identical claims against Telecheck. The Court agrees. For reasons stated in its order of September 5, 2003, the Court sustains Telecheck's motion to dismiss plaintiff's claims for negligent and intentional infliction of emotional distress. *See id.* at 13–15.

### II. Case No. 03–2189

As noted above, on April 17, 2003, plaintiff filed a survivor action against Harrah's, Burke, CI, NCO, Telecheck and the Tribe. That case alleged that under some unspecified Fair Credit Reporting Act, plaintiff was entitled to set aside gambling debts and recover gambling losses. It also repeated the allegations of the original complaint in Case No. 02–2166, *i.e.* that defendants had violated the FDCPA, RICO, IGRA and KCP–UPA, and that defendants committed intentional and negligent infliction of emotional distress. *Complaint* (Doc. # 1) in Case No. 03–2189.

### A. Motion To Dismiss By NCO (Doc. # 95)

NCO asks the Court to dismiss Case No. 03–2189 in its entirety, arguing that plaintiff has not stated a claim under the FDCPA, RICO and KCP–UPA, or for intentional or negligent infliction of emotional distress.[17] NCO also argues that plaintiff is not entitled to recover payments which Mr. Burdett lawfully made to NCO, to have lawfully incurred debts set aside, or to have adverse credit reports deleted. Plaintiff has not responded to NCO's motion and the Court therefore considers it to be unopposed.

In ruling on a motion to dismiss for failure to state a claim, the Court accepts the veracity of all well-pleaded facts in plaintiff's complaint and views the facts and all reasonable inferences in the light most favorable to plaintiff. Rule 12(b)(6), Fed.R.Civ.P.; *see Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail but whether plaintiff is entitled to offer evidence to support her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The pleadings must be liberally construed. *Gas-A-Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973). Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on those material elements that must be proved. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). A Rule 12(b)(6) motion should not be granted unless "it appears beyond

---

**17.** Although NCO does not address plaintiff's claims under IGRA, the Court notes that these claims do not apply to NCO.

doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Plaintiff's complaint alleges the following facts:

On April 17, 2003, plaintiff was appointed special administrator of the estate of Mr. Burdett. That same day, as special administrator, she filed a survivor action against Harrah's, Burke, CI, NCO, Telecheck and the Tribe.

Harrah's operates a gaming establishment for the benefit of the Prairie Band Potawatomi Nation, which is a federally recognized tribe of native American Indians. The gaming establishment, Harrah's Prairie Band Casino, is located on land which the United States Trust holds for the benefit of the Tribe.

Mr. Burdett visited the casino many times and cashed numerous personal checks which were dishonored on account of insufficient funds. According to plaintiff, these checks are "gambling debt." Harrah's and the Tribe engaged Telecheck, which in turn retained NCO to collect the dishonored checks. On numerous occasions, NCO communicated with Mr. Burdett to demand payment on the checks. After his death, NCO made such payment demands to plaintiff.

Mr. Burdett had a pathological gambling disorder. He twice filed for bankruptcy and he was hospitalized for pathological gambling. He experienced marital discord and committed suicide on April 19, 2001.

### 1. FDCPA Claims

With regard to the FDCPA, plaintiff repeats the allegations of the original complaint in Case No. 02–2166. *Compare* Doc. # 1 in Case No. 02–2166 and Doc. # 1 in Case No. 03–2189. In its order dated May 5, 2003, the Court reviewed the sufficiency of these allegations. *Memorandum And Order* (Doc. # 75). Because the complaint did not allege specific violations or state when they occurred, the Court directed plaintiff to file an amended complaint which specifically identified each FDCPA violation, the party who had committed the violation, and the date of the violation. *Id.* In response, on May 16, 2003, plaintiff filed a first amended complaint in Case No. 02–2166. She did not amend her identical complaint in Case No. 03–2189. As a result, plaintiff's complaint in Case No. 03–2189 does not more specifically identify any FDCPA violation or plead any date when it occurred.

The FDCPA provides that an action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). NCO argues that plaintiff filed suit on April 17, 2003, more than one year after Mr. Burdett's death, and that the one-year statute of limitations therefore bars her claim under the FDCPA.

Indeed, plaintiff filed this survivor action some three years after Mr. Burdett's death. On the face of the complaint, it seems clear that NCO did not violate Mr. Burdett's rights under the FDCPA during the one year prior to the date when plaintiff filed suit. The Court therefore dismisses plaintiff's FDCPA claims.

### 2. RICO Claims

On May 5, 2003, the Court dismissed plaintiff's RICO claims against Telecheck, Burke and CI in Case No 02–2166, and ordered plaintiff to show cause why it

should not dismiss her RICO claims against NCO in that case. *Memorandum And Order* (Doc. # 75). On May 16, 2003, plaintiff filed her *First Amended Complaint* (Doc. # 76) and *Motion To Amend RICO Claim* (Doc. # 77) in Case No. 02–2166. Plaintiff conceded that the reasoning which the Court used to dismiss her RICO claims against Burke, CI and Telecheck would also dispose of her RICO claim against NCO. *Motion To Amend RICO Claim* (Doc. # 77) in Case No. 02–2166. For this reason, and for reasons stated in its orders of May 5 (Doc. # 75) and September 5, 2003 (Doc. # 94) in Case No. 02–2166, the Court holds that plaintiff has no viable RICO claim against NCO in Case No. 03–2189. *Memorandum And Order* (Doc. # 94) at 6.

### 3. KCP–UPA Claims

NCO asks the Court to dismiss plaintiff's claims under the KCP–UPA, arguing that they do not apply to NCO because plaintiff alleges that only Harrah's and the Tribe violated the KCP–UPA by engaging in deceptive acts and practices. The Court agrees.

### 4. Negligent & Intentional Infliction Of Emotional Distress Claims

NCO asks the Court to dismiss plaintiff's claims for negligent and intentional infliction of emotional distress, arguing that these claims must fail as a matter of law. *Memorandum In Support Of Motion To Dismiss Case Number 03–2189* (Doc. # 96) at 7–9.

#### a. Negligent Infliction Of Emotional Distress

As stated above, Kansas law has long prohibited any recovery for negligent in-

fliction of emotional distress which is not accompanied by or does not result in physical injury. *E.g., Humes,* 246 Kan. at 598, 792 P.2d at 1038; *Anspach,* 817 F.Supp. at 1509; *Payne,* 731 F.Supp. at 1474. NCO does not deny that suicide is a physical injury, but argues that plaintiff has no valid claim for negligent infliction of emotional distress because as a matter of law, its collection efforts did not cause Mr. Burdett's suicide. *Memorandum In Support Of Motion To Dismiss Case Number 03–2189* (Doc. # 96) at 8.

Proximate cause is a prerequisite for liability due to negligence under Kansas law. *Cooper v. Eberly,* 211 Kan. 657, 508 P.2d 943 (1973); *Elliott v. Chicago, Rock Island & Pacific R.R. Co.,* 203 Kan. 273, 454 P.2d 124 (1969). Proximate cause is defined as that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. *Wilcheck v. Doonan Truck & Equip., Inc.,* 220 Kan. 230, 552 P.2d 938 (1976).

Courts have long been reluctant to recognize suicide as a proximate consequence of defendant's wrongful act. *Watters v. TSR, Inc.,* 904 F.2d 378, 383 (6th Cir.1990) (citing *Scheffer v. Washington City V.M. & G.S.R.R.,* 105 U.S. 249, 15 Otto 249, 26 L.Ed. 1070 (1881)). Generally, the act of suicide is viewed as an independent intervening act which the original tortfeasor could not have reasonably been expected to foresee. *Id.; see also Salsedo v. Palmer,* 278 F. 92 (2d Cir.1921); *Lancaster v. Montesi,* 216 Tenn. 50, 390 S.W.2d 217 (1965). In *Elliott,* the court stated:

Natural and probable consequences are those which human foresight can antici-

pate because they happen so frequently they may be expected to recur. It has also been said that it must appear the injury was anticipated or that it reasonably should have been foreseen by the person sought to be charged with liability. 203 Kan. at 284, 454 P.2d 124. An exception arises when the conduct of the tortfeasor causes a mental condition which results in an uncontrollable impulse leading to suicide. *See, e.g., Jamison v. Storer Broadcasting, Co.,* 511 F.Supp. 1286 (E.D.Mich. 1981); *Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir.1975); *Tate v. Canonica,* 180 Cal. App.2d 898, 5 Cal.Rptr. 28 (1960).

Plaintiff's complaint alleges that NCO harassed and oppressed Mr. Burdett and extorted payments, and that "having lost his life's savings, his credit, his retirement, his earnings, substantial marital assets ... [and] having suffered immeasurable and insurmountable emotional distress from his ... gambling debt and the debt collection it precipitated," Mr. Burdett committed suicide and "attribut[ed] the same to his gambling and the gambling debts." *Complaint* (Doc. # 1) in Case No. 03–2189, at 35–36. Reviewing the complaint in the light most favorable to plaintiff, it sufficiently alleges that NCO caused Mr. Burdett to commit suicide. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683 (issue not whether plaintiff will prevail but whether she is entitled to offer evidence to support her claims). The Court cannot conclude "beyond doubt" that plaintiff will be unable to prove causation under Kansas law. It therefore overrules NCO's motion to dismiss plaintiff's claim for negligent infliction of emotional distress.

### b. Intentional Infliction Of Emotional Distress

NCO argues that for the reasons outlined in the Court's order of September 5, 2003, plaintiff has no actionable claim for intentional infliction of emotional distress. More specifically, NCO argues that plaintiff does not allege extreme and outrageous conduct and she makes only a conclusory allegation that NCO inflicted extreme and severe emotional distress. *Memorandum In Support Of Motion To Dismiss Case Number 03–2189* (Doc. # 96) filed September 12, 2003 at 9.

In its order of September 5, 2003, the Court stated:

Kansas recognizes the tort of intentional infliction of emotional distress. *Moore v. State Bank of Burden,* 240 Kan. 382, 388, 729 P.2d 1205 (1986). A plaintiff claiming intentional infliction of emotional distress must meet two threshold requirements by showing that (1) defendant's conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery;" and (2) "plaintiff's emotional distress is so extreme and severe that no reasonable person should be expected to endure it." *Rupp v. Purolator Courier Corp.,* 790 F.Supp. 1069, 1073 (D.Kan.1992) (citing *Roberts v. Saylor,* 230 Kan. 289, 292–93, 637 P.2d 1175 (1981)); *see also Bailey v. Kenney,* 791 F.Supp. 1511, 1527 (D.Kan.1992). Mere insults, threats or annoyances do not rise to the level of outrage. The required threshold for an outrage claim is necessarily high to separate meritorious claims from those based on trivialities or hyperbole. *See Fletcher v. Wesley Med. Ctr.,* 585 F.Supp. 1260, 1261–62 (D.Kan.1984).

As a matter of law, plaintiff does not meet these requirements. First, plaintiff does not allege conduct that could be regarded as extreme and outrageous. To be actionable, "extreme and outrageous" conduct must amount to conduct

"so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts,* 230 Kan. at 293, 637 P.2d 1175.

*Memorandum And Order* (Doc. # 94) at 13–14. In this case, plaintiff alleges that NCO, a debt collector, sent mail to Mr. Burdett to collect gambling debts, and that it harassed and oppressed him in the process. *Complaint* (Doc. # 1) at 35. As the Court has noted, however, "[u]se of the . . . mail for debt collection efforts is not, without more, 'extreme and outrageous' conduct, . . . and the conclusory allegation that defendant[ ] harassed and oppressed the Burdetts adds nothing to plaintiff's claim."

Plaintiff does not state a claim for intentional infliction of emotional distress and the Court therefore sustains NCO's motion to dismiss that claim.

### 5. Fair Credit Reporting Act Claim

Plaintiff's complaint alleges that (1) Mr. Burdett paid gambling debts to NCO; (2) gambling contracts and debts are void and unenforceable as a matter of public policy in Kansas; (3) plaintiff is therefore entitled to recover all property and funds which Mr. Burdett transferred to NCO; (4) plaintiff is entitled to a declaration that she is not obligated to pay any gambling debt which NCO is attempting to collect; (5) any gambling debt should be deleted from the Burdetts' credit records; and (6) NCO should cease collection actions on any gambling debt. *Complaint* (Doc. # 1) at 39. NCO argues that because it attempt-ed to collect dishonored checks, not gambling debts, the Court must dismiss plaintiff's Fair Credit Reporting Act claim. Specifically NCO argues that plaintiff is not entitled to (1) recover payments which Mr. Burdett lawfully made to NCO, (2) set aside lawfully incurred debts, or (3) have adverse credit reports deleted. NCO also argues that even if plaintiff's allegations were true, she would be estopped from recovering payments because Mr. Burdett voluntarily participated in the allegedly illegal gambling and he therefore had unclean hands.

Plaintiff's claim is unclear because she does not cite any provision of any Fair Credit Reporting Act or allege how NCO violated it. Again, the Court does not see how plaintiff's complaint gives rise to a claim under the Kansas Fair Credit Reporting Act or the federal Fair Credit Reporting Act.[18] NCO's motion is equally non-responsive to any potential ground for relief under the statutes. The Court therefore overrules NCO's motion to dismiss but directs plaintiff to show cause in writing on or before **December 16, 2003** why her claims under the Fair Credit Reporting Act in Case No. 03–2189 should not be dismissed for failure to state a claim.

### B. Motion To Dismiss Of Telecheck (Doc. # 5)

Telecheck asks the Court to dismiss plaintiff's complaint, arguing that (1) plaintiff's FDCPA claims are barred by the one-year statute of limitations; and (2) plaintiff does not state claims under RICO or the KCP–UPA, or for negligent or intentional infliction of emotional distress. Telecheck also argues that plaintiff is not

---

**18.** Plaintiff does not even allege that Telecheck is a credit reporting agency. K.S.A. § 50–701(b); 15 U.S.C. § 1681(b).

entitled to recover payments which Mr. Burdett lawfully made to Telecheck, to set aside debts which Mr. Burdett lawfully incurred or to delete any adverse credit reports which it made. *Memorandum Of Law In Support Of Defendant Telecheck Services, Inc.'s Motion To Dismiss Case No. 03–2189* (Doc. # 6) filed September 22, 2003. Telecheck notes that plaintiff's allegations against NCO are nearly identical to those against it, and asks the Court to dismiss plaintiff's claims for the reasons stated in NCO's motion and corresponding memorandum.

For reasons stated in Part III.A. above, the Court sustains in part and overrules in part Telecheck's motion to dismiss. Specifically, the Court dismisses plaintiff's claims under the FDCPA and RICO, and her claim for intentional infliction of emotional distress. The Court overrules Telecheck's motion to dismiss plaintiff's claims under the Fair Credit Reporting Act and for negligent infliction of emotional distress in Case No. 03–2189, and directs plaintiff to show cause in writing on or before **December 16, 2003** why her claims under the Fair Credit Reporting Act in Case No. 03–2189 should not be dismissed for failure to state a claim.[19]

**IT IS THEREFORE ORDERED** that the *Motion For Summary Judgment* (Doc. # 88) filed on June 26, 2003 by NCO Financial Systems, Inc., in Case No. 02–2166 be and hereby is **SUSTAINED**. The Court dismisses plaintiff's claims under the FDCPA and her claims for negligent and intentional infliction of emotional distress. Plaintiff's claim under the Fair Credit Reporting Act is the sole claim remaining against NCO in Case No. 02–2166.

---

**19.** The Court also notes that plaintiff's KCP–UPA and IGRA claims do not apply to Tele-

**IT IS FURTHER ORDERED** that the *Motion To Dismiss Case Number 03–2189* (Doc. # 95) filed September 12, 2003 by NCO Financial Systems, Inc. be and hereby is **SUSTAINED** in part and **OVERRULED in part**. NCO's motion is **OVERRULED** as to plaintiff's claim for negligent infliction of emotional distress. NCO's motion is **SUSTAINED** as to plaintiff's claim for violation of the FDCPA and RICO, and her claim for intentional infliction of emotional distress. Plaintiff's claims under the KCP–UPA and IGRA do not apply to NCO. Plaintiff's claims under the Fair Credit Reporting Act and for negligent infliction of emotional distress are the only remaining claims against NCO in Case No. 03–2189.

**IT IS FURTHER ORDERED** that *Defendant Telecheck Services, Inc.'s Motion To Dismiss* (Doc. # 97) filed September 12, 2003 in Case No. 02–2166 be and hereby is **SUSTAINED**. The Court dismisses plaintiff's claims for negligent and intentional infliction of emotional distress against Telecheck. Plaintiff's only remaining claims against Telecheck are under the FDCPA (based on letters sent by Telecheck) and the Fair Credit Reporting Act.

**IT IS FURTHER ORDERED** that *Sheila Burdett's Preliminary Response To NCO's Motion For Summary Judgment & Motion To Lift The Stay So That Discovery Can Be Conducted In Complete Response Thereto* (Doc. # 111) filed September 19, 2003 be and hereby is **OVERRULED as moot**.

**IT IS FURTHER ORDERED** that *Defendant Telecheck Services, Inc.'s Motion To Dismiss Case No. 03–2189* (Doc. # 5)

---

check.

filed September 22, 2003 be and hereby is **SUSTAINED in part** and **OVERRULED in part.** Telecheck's motion is **OVERRULED** as to plaintiff's claim for negligent infliction of emotional distress. Telecheck's motion is **SUSTAINED** as to plaintiff's claims for violation of the FDCPA and RICO, and her claim for intentional infliction of emotional distress. Plaintiff's claims under the KCP–UPA and IGRA do not apply to Telecheck. Plaintiff's claims under the Fair Credit Reporting Act and for negligent infliction of emotional distress are the only remaining claims against Telecheck in Case No. 03–2189.

**IT IS FURTHER ORDERED** that *Defendants Edward T. Burke & Associates, P.C., Edward T. Burke, Esq. And Creditors Interchange, Inc.'s Notice Of Motion And Motion For Summary Judgment* (Doc. # 109) filed on October 24, 2003 be and hereby is **SUSTAINED.** The Court dismisses plaintiff's FDCPA claim against Burke and CI. Plaintiff's claim under the Fair Credit Reporting Act is the sole claim remaining against Burke and CI in Case No. 02–2166.

**IT IS FURTHER ORDERED** that plaintiff show cause in writing on or before **December 16, 2003** why her claims under the Fair Credit Reporting Act in Case Nos. 02–2166 and 03–2189 should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that plaintiff show cause in writing on or before **December 16, 2003** why her claims against Harrah's and the Tribe in Case No. 03–2189 should not be dismissed for lack of jurisdiction, as stated in the Court's order of May 5, 2003.

Dated this 10th day of December, 2003 at Kansas City, Kansas.[20]

---

20. To summarize, the sole remaining claims in Case No. 02–2166 are (1) plaintiff's FDCPA claim against Telecheck (Count I); and (2) plaintiff's Fair Credit Reporting Act claim against Telecheck, Burke, CI and NCO (Count III), which is the subject of the order to show cause. The sole remaining claims in Case No 03–2189 are (1) plaintiff's claims against Harrah's and the Tribe (Counts I–V); (2) plaintiff's claims against Burke and CI (Counts I–V); (3) plaintiff's claims against Telecheck and NCO for negligent infliction of emotional distress (Count IV); and (4) plaintiff's Fair Credit Report Act claim against Telecheck, Burke, CI and NCO (Count V), which is the subject of the order to show cause.